UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Discount Warehouses LP

Debtor.
_________________________________/

Case No. 26-31510
Chapter 11 proceeding

Judge: Mark A. Randon

**COVER SHEET FOR MOTION TO USE CASH**
**COLLATERAL OR TO OBTAIN CREDIT**

The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| **Provision** | **Contained in Proposed Order** | **Location in Proposed Order** |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ___x__ Yes<br><br>_____ No | Page _10_, ¶ _10_ |

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br>__x___ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | __x___ Yes<br>_____ No | Page _10_, ¶ _17_ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br>__x___ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | __x___ Yes<br>_____ No | Page _9-1, ¶ _10_ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br>__x___ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | __x___ Yes<br>_____ No | Page _10__, ¶ _11_ |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br>__x___ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__x___ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>___x__ No | Page ____, ¶ ____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>___x__ No | Page ____, ¶ ____ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__x___ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | ___x__ Yes<br><br>_____ No | Page _12_, ¶ 19__ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>_x____ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__x___ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | __x___ Yes<br><br>_____ No | Page 13, ¶ _22_ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br><br>_x____ No | Page ____, ¶ ____ |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 Proceeding |
| Discount Warehouses LP, | ) | |
| | ) | Case No. 26-31510 |
| | ) | |
| Debtor. | ) | Hon. Mark A. Randon |

_____________________________________________/

MOTION OF THE DEBTOR FOR ENTRY OF FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING SECURED BY LIENS ON PROPERTY OF THE ESTATE, (II) GRANTING SUPER PRIORITY CLAIMS PURSUANT TO SECTIONS 364(c)(1) and 364(d) OF THE BANKRUPTCY CODE, AND (III) SCHEDULING A FINAL HEARING, AND (III) GRANTING CERTAIN RELATED RELIEF

Discount Warehouses LLC (the "Debtor"), the above captioned Debtor and Debtor in Possession, through its proposed counsel, hereby submits this motion (the "Motion") seeking entry of a final order (the "Final Order"),, substantially in the form and on the terms as described herein pursuant to sections 361, 362, 364(c)(1), 364(c)(2), 364(d), 364(e), 507 and 552 of title 11 of the United States Code (as amended, 11 U.S.C. § 101-1532, et seq., the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"), (i) Approving the Commitment Letter for DIP Financing; (ii) Authorizing the Debtor to Obtain Secured Post-Petition Financing; (iii) Granting Liens and Granting Super-priority Administrative Expense Status; (iv) Granting Adequate Protection Pursuant to Sections 361, 362, and 364 of the Bankruptcy Code, (v) Scheduling a Final

Hearing on any objections, and (vi) Granting Related Relief.

## INTRODUCTION

The Debtor is requesting DIP Financing (defined below) that will allow it to enhance, preserve, and protect the value of the Property (as defined below) and the estate as a whole. The DIP Financing will provide the Debtor access to capital that it currently lacks to administer this case and enhance the value of the estate for all parties in interest by making renovations and capital improvements the Property, obtaining permits relating to the contemplated capital improvements on the Property, pay the professional fees and expenses of the Debtor, make critical vendor payments related to the completion of the capital improvements to the Property, pay for the costs of the DIP Loan, and pay other critical expenses that will allow the Debtor to successfully reorganize.

This Motion seeks authorization for the Debtor to obtain secured post-petition super-priority financing and other extensions of credit for up to $1,655,000 (the "DIP Financing") at 12.5 percent non-default interest with a maturity of 12 months. The DIP Financing will be secured by a super-priority lien on all of the real and personal property the Debtor owns and all other property interests, real, personal, or intangible of Borrower, now existing or hereafter acquired, including, without limitation, the contract rights and property interests acquired post-Closing (the "DIP Facility") pursuant to the terms and conditions of the certain Financing Commitment for a Chapter 11 Debtor-in-Possession Loan in the Maximum Loan Amount of One Million Six Hundred Fifty-Five Thousand Dollars ($1,655,000) (the "Commitment Letter") attached hereto as Exhibit 1.

The DIP Facility allows the Debtor to borrow up to $1,655,000 from 364 Capital, LLC ("DIP Lender") in return for super-priority liens on the Debtor's Property and other Collateral (as defined herein), adequate protection for the DIP Lender's interests, and post-petition secured claims in the Debtor's bankruptcy case. The Debtor proposes to use the DIP Facility to make improvements to the Property, pay its ordinary monthly operating expenses and capital expenses pursuant to the budget, and to pay post-petition professional fees upon Court approval. The Debtor's use of proceeds from the DIP Facility are subject to a budget (the "Budget"), which is attached to the Exhibit 1/the Commitment Letter as Exhibit A. The DIP Facility requested is necessary to make capital improvements to the Property that will result in an increase to the overall value of the Debtor and its estate; is otherwise fair and reasonable and in the best interests of the Debtor, its estate, its creditors and equity holders; and is necessary to afford the Debtor the ability to effectuate a reorganization for the benefit of its estate and all parties in interest. The Debtor has determined it cannot otherwise obtain unsecured financing or financing on otherwise better terms than offered by the DIP Facility. In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and venue is properly in the United States Bankruptcy Court for the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(D). The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. §157(b)(1). Venue of these proceedings and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409.

2. The statutory predicates for the relief sought herein are sections 105(a), 361, 362, 364, 503, 506, 507, and 726 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4000-2.

## GENERAL BACKGROUND

3. On June 26, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief under title 11 of the Bankruptcy Code (the "Bankruptcy Case"). The Debtor is operating its business and managing its assets as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no committee has been appointed to represent the interest of unsecured creditors in the Bankruptcy Case pursuant to section 1102(a) of the Bankruptcy Code.

### Business Operations of the Debtor

4. The Debtor is in the process of renovating the Property, an existing 84-unit apartment building known as Clio Gardens Apartments, generally located at 6914 Clio Court, Flint, Michigan 48504 (the "Property").

5. Once completed and stabilized, the Property would be worth approximately $6,500,000.00. In its "as-is" condition, the Property is valued at approximately 5,200,000.00. See Appraisal, attached as Exhibit 2. Debtor is in the process of obtaining an updated appraisal.

6. Up to now the Debtor has completed substantial interior and exterior renovations to the Property.

7. As of the Petition Date the Debtor has two secured creditors, Churchill MRA Funding, LLC ("Churchill") and Zlur Funding ("Zlur") though only Churchill has a lien against Debtor's real property.

8. In April 2021, the Debtor obtained a loan from A&S Capital in the initial amount of $2,876,881.00 secured by a mortgage against the Property. Upon information and belief that loan's current assignee is Churchill.

9. In March, 2026, the Debtor obtained a loan from Zlur Funding.

10. Prior to this case being filed, Churchill commenced a foreclosure action in the Genesee County Circuit (26-62110-CB) along with a motion to appoint a receiver.

11. Debtor would acknowledge that renovation process did not move as quickly as it had anticipated. This was caused by factors and events beyond Debtor's control that include constrained supply chains and associated price increases in the aftermath of the COVID-19 pandemic and the additional scope of work to address unforeseen items.

## RELIEF REQUESTED

12. Through this Motion, the Debtor requests that the Court enter the Order, substantially in the form as attached hereto as Exhibit 3 pursuant to sections 362 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c), seeking the following relief:

a. Authorizing the Debtor to obtain the DIP Financing on a final basis pursuant to the terms and conditions set forth in that certain DIP Commitment Letter (defined below) by and between the Debtor and 364

Capital, LLC (including any assignee or designee, the "DIP Lender");.

b. Authorizing the Debtor to execute, enter into and deliver to the DIP Lender all documentation for the DIP Financing and any associated security documents in form and substance satisfactory to the DIP Lender and to perform such other and further acts as may be required in furtherance of the DIP Financing and the DIP Loan Documents (defined below);

c. Authorizing the Debtor to draw on the DIP Financing, subject to the conditions precedent set forth in the DIP Loan Documents, and to use the proceeds of the DIP Loan to pay for the remaining costs related to the construction of capital improvements to the Property, the costs of administration of the Chapter 11 case and such other costs as expressly agreed to by the DIP Lender, in accordance with the DIP Loan Documents and the Budget (as defined below);

d. Deeming Churchill and Zlur adequately protected;

e. Granting the DIP Lender automatically perfected first-priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Financing and all obligations owing and outstanding thereunder (collectively, the "DIP Obligations");

f. Granting allowed super priority administrative expense claims to the DIP Lender for the DIP Obligations;

g. Modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to provide the DIP Lender with the relief

necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the Final Orders, as applicable;

h. Scheduling a hearing pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2, to consider entry of the Final Order, inter alia¸ approving and authorizing the DIP Financing on a final basis.

BASIS FOR RELIEF

13. The Debtor has a critical need to obtain post-petition financing under the DIP Financing in order to pursue its reorganization efforts. The Debtor does not have sufficient available resources to continue the renovation of the Property without the financing requested herein. Ensuring that the Property is fully complete and in the most cost-effective manner is of the utmost importance for the Debtor's business operations, but more importantly, for its creditors.

14. The Debtor is unable to obtain financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority claim pursuant to section 364(a)(1) of the Bankruptcy Code, without the grant of liens on assets.

15. The Debtor has been unable to obtain funding on terms that are more favorable than offered by the DIP Lender.

16. Without the DIP Financing, the Debtor would be unable to complete and stabilize the Property, its estate would decrease substantially in value, and the Debtor would not be able to pursue its reorganization efforts.

17. The DIP Lender has indicated a willingness to provide the Debtor with the DIP Financing, but only in compliance with the terms and conditions set forth in this Motion. The Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by the DIP Lender represents the best financing presently available to the Debtor. These funds will be used to complete the construction and development of capital improvements to the Property, and to pay such other costs expressly agreed to by the DIP Lender, in accordance with the Budget, and otherwise fund the expenses of the Debtor's business.

18. The Debtor has negotiated the DIP Financing in good faith and at arm's length with the DIP Lender. The Debtor believes that the terms of the DIP Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. See declaration of Barry Cohen attached as exhibit 4.

SUMMARY OF PRINCIPAL TERMS OF THE DIP FINANCING

19. In accordance with Bankruptcy Rules 4001(c) and 4001(d), the following is a concise statement and summary of the proposed material terms of the DIP Financing as provided for in the DIP Facility, the DIP Commitment Letter (defined below), and the DIP Order:

| | |
|---|---|
| Type and Amount: | The Post-Petition Financing will be a loan in the approximate amount of $1,655,000. (the "Maximum Commitment") that shall be available to borrow in accordance with the terms and conditions identified in the commitment letter and terms and conditions (attached here to as Exhibit 1, the "DIP Commitment Letter") (the "DIP Loan"). |

Purpose: The DIP Loan will be used in accordance with the Budget attached to the DIP Commitment Letter for (a) the construction of the Project, (b) bankruptcy-related costs and expenses, and (c) for any other purpose agreed upon by the DIP Lender and the Debtor.

Budget and Projections: Use of cash shall be subject to the Budget for the period commencing on the Petition Date and ending on the Closing Date (as defined below), each in the form and substance acceptable to the DIP Lender in its sole discretion (the "Budget," attached hereto as part of the letter of intent, Exhibit 1). The Debtor will be required to keep the Budget "in balance" as defined in the paragraph 15 of the DIP Commitment Letter.

The DIP Lender will require that the Borrower provide documentation supporting all requests for disbursement of all sources of funds and amounts available pursuant to the DIP Loan.

Priority: The DIP Loan shall be:

1. Pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in this Chapter 11 case with priority over any and all administrative expense claims, adequate protection claims, diminution claims, and all other claims against the Debtor or its estate, whether heretofore or hereafter incurred, of the kinds specified in sections 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 or 1114 of the Bankruptcy Code, including the proceeds of avoidance actions and subject to the entry of the Final Order;

2. Pursuant to section 364(c)(2) of the Bankruptcy Code, secured by a perfected first-priority security interest in and lien on the DIP Collateral (as defined below) to the extent that such DIP Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date;

3. Pursuant to section 364(d) of the Bankruptcy Code, secured by a perfected first-priority security interest in and lien on all DIP Collateral to the extent such DIP Collateral is subject to prior, perfected liens, which such liens shall be primed by the other liens granted to the DIP Lender (the "Priming DIP Lien"); and

4. The Priming DIP Lien shall not be subject to being subordinated to any other liens or security interests (whether currently existing or hereafter created), subject in each case only to permitted exceptions to be expressly agreed upon in writing by the DIP Lender in its discretion or imposed by applicable non-bankruptcy law (collectively, the "Permitted Liens").

Security: The DIP Loan shall be secured by, among other things, a first-priority mortgage and assignment of leases and rents (the "Security Instrument"), which shall be a first priority security interest in the Debtor's leasehold interest in certain real property known as 6914 Clio Court, Flint, Michigan and all improvements thereto.

In addition, the DIP Lender shall be secured by a first priority lien on all equipment, furniture, fixtures, materials to be incorporated into the Improvements, and any other personal property owned by the Debtor located on or used in connection with the improvements.

DIP Collateral: "DIP Collateral" means all of the real and personal proptery that the Debtor owns including. But not limited to, the Property, together with all buildings, structures, and other improvements now or hereafter located on the land.

Security Instrument: "Security Instrument" shall mean a first-priority mortgage and assignment of leases and rents.

DIP Loan "DIP Loan Documents" shall include, but is not limited to, construction loans agreement, promissory note, first priority mortgage and assignment of rents, first priority assignment of project documents, guaranties of payment (as to recourse events) and completion, environmental indemnity agreement and other documents and instruments which evidence, guaranty, secure, or otherwise pertain to the DIP Loan.

Closing Date: "Closing Date" shall mean the date of execution of the DIP Loan Documents and recordation and/or filing of the Security Instrument.

Interest: Interest shall accrue at 12.50% per annum.

Maturity Date: The DIP Loan shall mature twelve (12) months after the Closing Date (the "Loan Maturity Date") though it may be extended for two

additional six (6) month terms.

Payment Terms: The DIP Loan will be a non-amortizing obligation with interest-only payments to be paid from the Interest Reserve Account

Optional The Debtor may prepay the DIP Loan in whole or in part, before maturity, however, a minimum 180 days interest will be due to the DIP Lender regardless of repayment date.

Adequate Protection Protection Payments: Based on the value of the Project, both at completion and in its current state, Churchill is adequately protected, even after its prepetition liens are primed by the new liens granted to the DIP Lender in connection with the DIP Financing. Therefore, Churchill is not entitled to any additional form of adequate protection.

Good Faith The DIP Lender shall have …need to include language on 364€.

APPLICABLE AUTHORITY

A. The Debtor Should be Permitted to Obtain Post-Petition Financing Pursuant to Sections 364(c) and 364(d)(1) of the Bankruptcy Code.

20. Section 364(c) of the Bankruptcy Code requires a finding, made after notice and a hearing, that the debtor seeking post-petition financing on a secured basis cannot "obtain unsecured credit allowable under section 503(b)(1) of the [the Bankruptcy Code] as an administrative expense." 11 U.S.C. § 364(c). In addition, section 364(d)(1) of the Bankruptcy Code, which governs the incurrence of post- petition debt secured by "priming" liens, provides that the Court, after notice and a hearing, may:

> (d)(1) authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the [debtor] is unable to obtain credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

21. In evaluating proposed post-petition financing under sections 364(c)and (d) of the Bankruptcy Code, courts perform a qualitative analysis and generally consider similar factors, including

a. whether unencumbered credit or alternative financing without super priority status is available to the debtor;

b. the credit transactions are necessary to preserve assets of the estate;

c. the terms of the credit agreement are fair, reasonable, and adequate;

d. the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors; and

e. the proposed financing agreement adequately protects prepetition secured creditors.

f. See e.g. In re Aqua Assoc., 132 B.R. 192 (Bankr. E.D. Pa. 1991) (applying the first three factors in making a determination under section 364(c)); In re Crouse Group, Inc., 71 B.R. 544 (Bankr. E.D. Pa. 1987) (same); Bland v. Farmworker Creditors, 308 B.R. 109, 113-114 (S.D. Ga. 2003) (applying all factors in making a determination under section 364(d)).

B. For the reasons discussed below, the Debtor satisfies the standards required to access post-petition financing on a secured superpriority and priming lien basis under sections 364(c) and 364(d) of the Bankruptcy Code. The Debtor was Unable

to Obtain Financing on More Favorable Terms.

22. The Debtor solicited alternative financing proposals prior to the Petition Date. However, the Debtor was unable to procure unsecured financing. The current proposal was on the terms that were most beneficial to the estate. The Debtor believes its efforts to obtain post-petition financing therefore satisfy the standard required under section 364(c) of the Bankruptcy Code. See e.g. *In re Simasko Production Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates); *In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where few lenders can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing").

23. Debtor believes that it can complete the renovations 3-4 months if the DIP Financing is approved, and that getting the work completed quickly is time sensitive, especially as it relates to the Debtors plan to reorganize. See e.g. *In re Snowshoe Co.,* 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that section 364(d) of the Bankruptcy Code "imposes no duty to seek credit from every possible lender, particularly when time is of the essence to preserve a vulnerable seasonal enterprise").

C. The DIP Financing is Necessary to Preserve the Assets of the Debtor's Estate.

24. As noted in supra, the Debtor needs financing to successfully reorganize Also, as the debtor in possession, the Debtor has a fiduciary duty to protect and maximize the assets of its estate. See *In re Mushroom Transp. Co.,* 382 F.3d 325, 339 (3d Cir. 2004). The DIP Financing allows the Debtor to do so.

D. The Terms of the DIP Financing are Fair, Reasonable and Appropriate Given the Circumstances.

25. In considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.,* 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); See also *In re Ellingsen MacLean Oil Co*., 65 B.R. 385, 365 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

26. The DIP Financing was negotiated in good faith and at arm's-length between the Debtor and the DIP Lender. These negotiations resulted in an agreement which will allow the Debtor to continue its operations and either successfully reorganize or complete a sale of the Project.

E. Entry into the DIP Facility Reflects the Debtor's Sound Business Judgment.

27. A debtor's decision to enter in a post-petition financing arrangement under section 364 of the Bankruptcy Code is governed by the business judgment standard. See e.g. *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (financing decisions under section 364 of the Bankruptcy Code must reflect a debtor's business judgment).

28. Bankruptcy courts generally will defer to a debtor-in-possession's business

judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). The court will generally not second-guess a debtor in possession's business decisions involving a "business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the [Bankruptcy] Code." Id. at 513-14.As noted above, the Debtor has exercised sound business judgment in determining that the DIP Financing does satisfy the legal prerequisites to incur debt under section 364 of the Bankruptcy Code on the terms set forth in the DIP Commitment Letter and DIP Loan Documents. The Debtor believes the DIP Financing provides the best terms that are available under the circumstances.

29. The DIP Loan is essential to enable the Debtor to avoid irreparable harm to the Debtor's business operations, assets and its creditors.

30. Therefore, pursuant to sections 364(c) and (d)(1) of the Bankruptcy Code, the Debtor respectfully submits that it should be granted authority to enter the DIP Financing and obtain the DIP Loan on the secured and administrative superpriority basis described herein.

## REQUEST FOR A FINAL HEARING

31. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing on any timely filed objections to this motion that is as soon as practicable.

32. Notice of this motion has been given to (i) the United States Trustee for the Eastern District of Michigan (the "US Trustee"), (ii) counsel for Churchill, (iii) the holders of the twenty (20) largest unsecured claims against the Debtor's estate, (iv) all other secured creditors, and (v) all parties identified in Bankruptcy Rule 4001(d) (collectively, the "Noticed Parties").

## CONCLUSION

WHEREFORE, the Debtor requests that this Court enter an Order substantially in the form attached hereto and grant such other and further relief as the Court may deem proper.

Respectfully submitted by:

Respectfully submitted,
SIMEN, FIGURA & PARKER P.L.C

Dated: August 24, 2026

/s/Peter T. Mooney________________
Peter T. Mooney (P47012)
5206 Gateway Centre #200
Flint, MI 48507
(810) 235-9000

Respectfully submitted,

Simen, Figura & Parker, PLC

/s/Peter T. Mooney____________
Peter T. Mooney (P47012)
5206 Gateway Centre, Ste. 200
Flint, MI 48507
810-235-9000
pmooney@sfplaw.com

Dated: August 25, 2026