# 364 CAPITAL, LLC

**NAPLES** I ASPEN I DALLAS I MIAMI

June 29, 2026

**DEBTOR:**

Discount Warehouses, LP
c/o Mr. Barry Cohen
7065 W. Ann Road
Suite 130-683
Las Vegas, NV 89130

**DEBTOR'S COUNSEL:**

Simen, Figura & Parker, PLC
c/o Mr. Peter T. Mooney, Esq.
5206 Gateway Centre #200
Flint, MI 48507

**In re: FINANCING COMMITMENT FOR A CHAPTER 11 DEBTOR-IN-POSSESSION LOAN IN THE MAXIMUM LOAN AMOUNT OF ONE MILLION SIX HUNDRED FIFTY-FIVE THOUSAND DOLLARS ($1,655,000) ("DIP LOAN").**

Mr. Cohen:

In reference to the above-captioned matter, the undersigned is pleased to provide this non-assignable commitment ("**Commitment**") for a Chapter 11 debtor-in-possession term loan to the Borrower, debtor and debtor-in-possession in the United States Bankruptcy Court for the Eastern District of Michigan, Flint Division ("**Bankruptcy Court**"), under case number 26-31510-JDA ("**Bankruptcy Case**").

**LENDER:** **364 CAPITAL, LLC**, a Delaware limited liability company, and/or its participants or assigns ("**Lender**").

**BORROWERS:** **DISCOUNT WAREHOUSES, LP**, a Nevada limited partnership ("**Debtor**" or "**Borrower**").

**LOAN/LOAN AMOUNT:** The Borrower shall make an application for a secured super-priority debtor-in-possession term loan facility in the amount of **ONE MILLION SIX HUNDRED FIFTY-FIVE THOUSAND DOLLARS ($1,655,000)** (hereafter, the

"**DIP Loan**") to be made upon entry of the Final Order [as herein defined] of the Bankruptcy Court authorizing the DIP Loan.

For the avoidance of doubt, Lender shall not be required to advance more than the aggregate amount of the DIP Loan ("**Maximum Loan Amount**").

**BUDGET/USE OF PROCEEDS:** Proceeds from the DIP Loan shall be used by Borrower in accordance with the budget and in substantially the same form as that which is attached hereto as **Exhibit "A"** ("**Budget**"), which Budget may be modified as approved by Lender on, or before, the date of the hearing for the approval of the DIP Loan.

At Closing, Lender shall not advance to Borrower any line-items in the Budget which are capitalized for the benefit of Borrower and due to Lender including, but not limited to, the Commitment Fee, the Servicing Fee, the Interest Reserve, and the Deferred Fee (together, "**Holdbacks**").

**FINAL ORDER:** With respect to the DIP Loan, the order of the Bankruptcy Court satisfying the requirements of this Commitment and granting Lender the liens and other rights described herein has been entered, and (a) which order has not been appealed, modified, stayed, vacated, amended, or reversed, or (b) which order is not subject to a stay and the Parties, in each of their sole and absolute discretion, elect to proceed with such financing ("**Final Order**").

Lender, in its sole and absolute discretion, shall approve the form and substance of the Final Order.

**LOAN ADVANCES:** A. Upon the entry of the Final Order of the Bankruptcy Court, and upon the satisfaction, in Lender's sole and absolute discretion, of all requirements and Conditions [as herein defined] of this Commitment and the Loan Documents, Lender will advance the Maximum Loan Amount, net of the Holdbacks, to the Debtor and/or Title Company at Closing.

B. Subject to the economic and non-economic terms under this Commitment, Lender, in its sole and absolute discretion, may make advances on the Loan to pay Lender Expenses (as herein defined) incurred in connection with the Loan, which Lender Expenses shall automatically become part of the principal amount of the Loan as of the date(s) that each such advance was made, which advances may collectively result in a sum in excess of the Maximum Loan Amount.

C. The following expenses shall collectively be referred to herein as, "**Lender Expenses**" and shall include, but not be limited to:

(i) all of Lender's reasonable costs and out-of-pocket expenses (including, but not limited to, travel and lodging expenses) related to, and in connection with, the DIP Loan or the Bankruptcy Case;

(ii) the reasonable legal fees (calculated on a time-spent basis, based upon the standard hourly rates of Lender's counsel generally charged to clients of that firm for similar matters), and out-of-pocket expenses (including, but not limited to, travel and lodging expenses) of Lender's counsel related to, and in connection with, the DIP Loan or the Bankruptcy Case (post-closing attorneys' fees incurred by Lender's counsel shall be submitted to the Bankruptcy Court on a periodic basis for approval).

(iii) in the event of default, out-of-pocket expenses for the administration of the DIP Loan and monitoring of the Collateral;

(iv) travel expenses required to facilitate the transaction(s), and service the same, described under this Commitment and/or the Loan Documents, monitor the Bankruptcy Case and/or the Collateral, and protect any of Lender's rights under this Commitment and/or the Final Order;

D. Borrower hereby acknowledges that the DIP Loan shall be without cost to Lender.

**TERM:** The maturity date of the DIP Loan shall be TWELVE (12) months from the Closing of the DIP Loan ("**Maturity Date**").

The Borrower shall have the option, provided no defaults exist, to extend the term of the loan by an additional SIX (6) months past the Maturity Date ("**Loan Extension**").

In the event of a Loan Extension, the Borrower shall pay to Lender a loan extension fee of TWO AND ONE-HALF PERCENT (2.5%) of the Maximum Loan Amount, due and fully earned on or before the Maturity Date.

**INTEREST/**
**INTEREST RESERVE:** A. The interest rate shall be TWELVE AND ONE-HALF PERCENT (12.50%) ("**Contract Rate**").

B. Interest only payments on the unpaid principal balance shall be due monthly, in arrears [i.e. due on first day of each month for the prior month's interest].

C. To the extent of a balance therein, monthly payments of interest shall be made from the interest reserve account ("**Interest Reserve Account**").

D. Monthly payments will be computed on a 30-day month and a 360-day year unless such computation results in the effective interest rate of the DIP Loan exceeding the maximum rate of interest allowable under applicable state and federal law. It is hereby understood and agreed upon by and between the Borrower and Lender that the Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at an effective rate, in excess of the maximum rate allowable under applicable state and federal law. If the effective interest rate does exceed the maximum rate allowable by applicable state or federal law, the Borrower and Lender intend to and hereby agree to reduce the effective interest rate to the maximum rate allowable by state or federal law. Any and all interest amounts collected by the Lender in excess of the maximum rate allowable under state and federal law shall be applied to reduce the principal balance of the DIP Loan.

E. Upon occurrence of an event of an uncured default, interest shall accrue to the Lender at the lower of (i) the sum of the Contract Rate, plus an additional SIX PERCENT (6.00%), or (ii) the maximum effective interest rate allowable under state or federal law ("**Default Rate**"). Without limiting the generality of the foregoing, any payment made more than ten (10) business days past their due date shall be deemed to be in default and shall be assessed at the Default Rate. If the Default Rate's effective interest rate exceeds the maximum rate allowable by applicable state or federal law, the Borrower and Lender intend to and hereby agree to reduce the Default Rate's effective interest rate to the maximum rate allowable by state or federal law. Any and all interest amounts collected by the Lender in excess of the maximum rate allowable under state and federal law shall be applied to reduce the principal balance of the DIP Loan.

F. Borrower agrees that Lender shall earn no less than ONE HUNDRED EIGHTY (180) days of interest from the Closing of the DIP Loan, computed at the Contract Rate on the Maximum Loan Amount.

G. Borrower has the absolute obligation to pay interest and other amounts due in connection with the DIP Loan as such interest and/or other amounts become due and payable, despite the balance remaining, or lack thereof, in the Interest Reserve Account. For purposes of clarity, interest shall be paid first from the Interest Reserve Account.

**LOAN SERVICING FEE:** At the time of the Closing [as herein defined] of the DIP Loan, from the proceeds of such funding, Borrower shall pay to Lender a loan servicing fee of ONE PERCENT (1.00%) of the Maximum Loan Amount ("**Servicing Fee**"). In the event of default, an additional sum of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00) per month shall be paid to Lender until such time that the default has been cured.

In the event of a Loan Extension, Borrower shall pay to Lender an additional sum of ONE-HALF PERCENT (0.5%) of the Maximum Loan Amount, due on or before the Maturity Date.

**COLLATERAL/ OTHER RIGHTS**: A. The DIP Loan shall be secured by a first priority mortgage (or deed of trust or similar security instrument) lien on real and personal property which Borrower owns and other property interests, real, personal, or intangible of Borrower, now existing or hereafter acquired, including, without limitation, contract rights and property interests acquired post-Closing [as herein defined].

The Collateral shall include, but not be limited to, that certain 2-story, walk-up, multifamily building consisting of 84 residential units with 104,184 square feet of gross building area and encompassing 5.52 acres of land (Parcel IS 46-26-101-054), generally located at 6914 Clio Court, Flint, MI 48504 ("**Real Property**").

In addition, the Collateral shall include all furniture, fixtures, and equipment, as well as all permits and licenses, accounts receivable, leasehold rights, third-party contracts, plans and specifications for the Real Property, and any other asset of the Borrower not in the form of real property (collectively, the "**Personal Property**").

The Real Property and Personal Property are more particularly described and additionally expanded under **Exhibit "B"** and **"B-1"** attached hereto <u>except</u> for actions or causes of action arising under sections 502(d), 506, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552 or 553 of the Bankruptcy Code, or any fraudulent or voidable conveyance, or preference laws under applicable state or other law, and the proceeds thereof, and any other causes of action currently pending, or to be filed, by the Debtor or any successor and the proceeds thereof <u>except</u> for the proceeds of the foregoing that is in the form of real property ("**<u>Collateral</u>**").

The priming mortgage liens (or deed of trust or similar security instrument) and security interests in favor of Lender shall be senior to any and all other prepetition or postpetition liens or interests, including, without limitation, judgment liens, mechanics' liens, liens imposed by applicable covenants, declarations and restrictions, mortgages and security interests encumbering said Collateral pursuant to 11 U.S.C. §§ 364(d) and 364(c)(2). Lender's liens and security interests in the Collateral shall also be senior to all other interests of any party, including, without limitation, tax liens (except ad valorem taxes for 2025 and subsequent years). Lender's liens and security interests may be subject to deed restrictions, equitable servitudes or other rights in such Collateral as may be acceptable to Lender, its counsel, and the Title Company [as herein defined], in their sole and absolute discretion.

B. In addition to the foregoing, as a condition precedent to Lender's obligation to make the DIP Loan, and as a material inducement to the Lender, the Lender shall also receive a superpriority administrative expense as to Borrower's monthly payment obligations in the Bankruptcy Case pursuant to 11 U.S.C. §§ 364(c)(1), 503(b) and 507(b), with priority over all other administrative expense claims in the Bankruptcy Case except fees payable to the Clerk of the Bankruptcy Court or the Office of the United States Trustee ("**<u>Carve Out</u>**"), with the proviso that the Lender's first lien position with respect to the Carve Out shall not be subject to surcharge, either pursuant to 11 U.S.C. § 506(c) or otherwise. The Lender shall not be required, without its consent and at its sole and absolute discretion, to accept property other than cash in satisfaction of (a) its liens and security interests which encumber the Collateral as security for payment of the DIP Loan, and (b) the super-priority administrative expense claim, notwithstanding 11 U.S.C. § 1129 (a)(7) or (b)(2)(A). The Borrower hereby agrees not to support or seek to modify, subordinate, reduce, impair, alter, surcharge, extinguish or otherwise change either the priming lien or superpriority administrative expense claims of the Lender pursuant to any provisions of Title 11 or other applicable law, except that Lender

acknowledges and agrees that should the a proposed plan of reorganization ("**Plan**") be confirmed and go effective, the Lender's administrative claim will be paid pursuant to that Plan, provided that the Plan is agreeable to the Lender, does not otherwise impair its Liens, and the payments conform to the Budget. None of the Lender's rights as set forth herein may be modified except with the express written consent of the Lender.

C. Lender's mortgage liens (or deed of trust or similar security instrument) and security interests shall not be primed, surcharged, altered or impaired, marshaled or otherwise adversely affected in any way, whether requested by a creditor of the Borrower or any other party. No claim or expense, including those that are the subject of the Carve Out, shall have priority over, or be *pari pasu* with, Lender's rights in the Collateral. Except as provided in the immediately preceding paragraphs A and B, including, without limitation, the Carve Out, no administrative expense, and no claim allowed and payable under 11 U.S.C. §§ 330, 331, 503(b) 506(c), 507 or 726, shall have priority over, or be *pari pasu* with, the Lender with respect to any asset of the Borrower which constitutes either the Collateral pursuant to 11 U.S.C. §364(d) or with respect to the claims of the Lender pursuant to 11 U.S.C. §364(c)(1).

D. The Final Order of the DIP Loan authorizing the first priority liens and super-priority administrative expense claims in favor of the Lender and incorporating the terms and requirements of this Commitment, shall also contain both a finding by the Bankruptcy Court that the extension of credit and making of the loan(s) by Lender hereunder to Borrower is being made in good faith and, therefore, Lender shall be entitled to the full protections of 11 U.S.C. §364(e) and shall be made effective immediately without any stay of the effect of such order and/or Final Order so as to permit, in Lender's sole and absolute discretion, immediate funding within the provisions and protections of 11 U.S.C. §364(e).

E. In the event of a conflict between the Final Order authorizing the DIP Loan and granting the interests in favor of the Lender as herein set forth and any order issued by the Bankruptcy Court, including any order confirming any plan of liquidation or reorganization, the terms of the Final Order authorizing the DIP Loan shall control.

**COVENANTS**: In addition to all standard covenants required by the Lender in debtor-in-possession and post-petition loans made under like circumstances,

including all standard commercially appropriate terms in the Lender's absolute discretion, the Lender will require that:

A. Borrower shall: (a) own the Collateral, (b) disburse funds for the payment of expenses only as set forth in substantial compliance with the Budget, or as otherwise agreed to by Lender, (c) comply with all provisions of the Final Order, this Commitment and the Loan Documents, (d) present to the Lender such additional instruments as may be required for endorsements to the Title Insurance Policy as Lender may require insuring that each advance of the DIP Loan, retain the lien priority described therein, (e) notify Lender in writing of any material adverse change in the Collateral, the financial condition of the Borrower or the financial viability or performance of the Borrower's property, or of economic conditions which may materially adversely affect the value or performance of the Borrower's property, and (f) comply with all statutory deadlines for filing a Chapter 11 Plan of Reorganization [as herein defined] and the solicitation of acceptances of the Plan [as herein defined], unless otherwise extended by an order of the Bankruptcy Court.

B. Borrower shall supply to Lender: (a) on or before the 15th day of each month for the preceding calendar month during the term of the DIP Loan, a receipts and disbursements statement relating to the operation of the Collateral including the use of Loan proceeds; (b) on or before the 15th day of each month during the term of the DIP Loan, a schedule reflecting both all available proceeds not yet disbursed, if any, and all outstanding costs; (c) within TEN (10) business days after Borrower receives a copy of the same, copies of any and all appraisals of any of the Collateral; and (d) all information reasonably necessary and/or requested for Lender to monitor its DIP Loan to Borrower.

C. So long as any portion of the DIP Loan remains outstanding, the Borrower shall not seek or permit (absent Lender's consent), and shall actively object to the request for entry of, (a) an order dismissing or converting the Bankruptcy Case or (b) any order which authorizes under any section of the Bankruptcy Code the granting of any lien or security interest in any Collateral, other than those already in existence, in favor of any party other than Lender or the obtaining of any credit or the incurring of any indebtedness that is entitled to super-priority administrative status equal to or superior to that granted to Lender.

D. Borrower shall: (a) own the Collateral, (b) disburse funds for the payment of expenses only as set forth in substantial compliance with the Budget, (c) comply with all provisions of the Final Order, this Commitment

and the Loan Documents, (d) present to the Lender such additional instruments as may be required for endorsements to the Title Insurance Policy as Lender may require insuring that each advance of the DIP Loan retain the lien priority described therein, (e) notify Lender in writing of any material adverse change in the Collateral, the financial condition of the Borrower or the financial viability or performance of the Borrower's.

E. Borrower shall notify Lender of any and all parties including, but not limited to, the general contractor, sub-contractor, and/or materialmen providing on-going services to the Debtor, or changes thereto.

F. Lender shall not be required to accept property other than cash in satisfaction of its DIP Loan.

G. Debtor shall provide Lender with any and all drafts of motions, requests or plans that relate to the Real Property, Personal Property, Collateral, or any financing contemplated by this Commitment prior to being filed in the Bankruptcy Case with the Bankruptcy Court.

**DEFAULT/ REMEDIES:**

A. The Loan Documents shall contain events of default and remedies customarily required by Lender in its absolute discretion in transactions such as those which are contemplated under this Commitment and that are consistent with industry standards.

B. In addition to other rights and remedies available under the Loan Documents or applicable law, upon occurrence of an event of default:

i) Lender, if it seeks to exercise its rights and remedies under the Loan Documents with respect to the default, shall provide written notice ("**<u>Written Notice</u>**") to the Borrower, the Borrower's counsel of record in the Bankruptcy Case, the United States Trustee, and all persons entitled to notice, including, without limitation, all entities scheduled by the Borrower as secured creditors of the Borrower in the Bankruptcy Case, and counsel (if any) for the official committee of unsecured creditors, and shall file an affidavit with the Bankruptcy Court specifying the default. The Written Notice may be any written document providing notice of default, including but not limited to the affidavit filed with the Bankruptcy Court.

ii) Any party entitled to the Written Notice shall have thirty (30) business days from the receipt of the Written Notice in which to cure the default or file a controverting affidavit with respect to the default. If a claimed default involves a construction-related delay due to factors

outside of Borrower's control Borrower shall not be in default so long as it works diligently to resolve any such delay.

iii) If the default which is subject to a thirty (30) days notice is not cured within the prescribed thirty (30) business day period, Lender may file an emergency motion for relief from the automatic stay, and Lender may request that the Bankruptcy Court set an expedited hearing on 48 hours' notice to determine whether Lender shall be granted relief from the automatic stay to foreclose on its liens or take any other action available to Lender under the Loan Documents and applicable law. At the hearing the Borrower may only contest the Lender's declaration of the default and may not assert any other or additional defenses.

C. The entire outstanding principal balance with respect to the DIP Loan, plus all accrued and unpaid interest (including interest at the Default Rate, from the date of the actual default notwithstanding the date the Written Notice is provided to the Borrower), fees and costs, through the date of payment, shall, in addition to default by Borrower under the Loan Documents as described above, automatically become due and payable upon (i) the failure to cure any default as is set forth above, (ii) the confirmation of any plan of reorganization in the Bankruptcy Case unless the plan proposes to treat Lender's claims in the same manner as provided in this Commitment and the Loan Documents, or such other treatment as the Lender, in its sole and absolute discretion, may agree in writing, (iii) conversion of the Bankruptcy Case to a case under Chapter 7 if, at or prior to the Closing [as herein defined] of the DIP Loan, the Bankruptcy Case is a Chapter 11 case, (iv) appointment of a Chapter 11 trustee or examiner with expanded powers unless the Lender consents to such an appointment, (v) dismissal of the Bankruptcy Case, (vi) entry of an order granting relief from stay to any party with regard to any interest in the Collateral or any other property of the estate of Borrower, (vii) entry of an order approving the transfer of any of the Collateral, or the actual transfer of any of the Collateral either voluntarily or by operation of law, to a party other than Lender, (viii) any order which authorizes under any section of the Bankruptcy Code the granting of any lien or security interest in any Collateral in favor of any party other than Lender or the obtaining of any credit or the incurring of any indebtedness that is entitled to priority status equal to or superior to that granted to Lender, (ix) the institution of any foreclosure action with respect to any interest in the Real Property of the estate of Borrower.

D. Any failure of Lender to enforce its rights is not a waiver of such rights, and any action Lender may seek as a remedy to enforce its rights

shall remain in full force and effect as of the date of the original date of such default.

**CONDITIONS:** Lender's obligations to close the DIP Loan shall be expressly subject to the following conditions precedent ("**Conditions**"):

A. On or before **August 25, 2026,** the Borrower shall have filed with the Bankruptcy Court a motion, in form and substance acceptable to Lender in its discretion, requesting (i) approval of the DIP Loan as described herein and (ii) authority to grant the Lender the lien priorities described herein with respect to the Collateral ("**Motion**"). A copy of this Commitment shall be attached to the Motion as filed and served on all parties in interest required to be so served. The Motion shall have been served on all creditors of the Borrower, all parties with whom the Borrower has an executory contract with respect to the Improvements or any of the other Collateral, all taxing authorities having or asserting authority over the Borrower, all entities having an executory contract with the Borrower, all entities who have filed a "notice to owner" or asserted potential lien rights with reference to the Collateral or any component of the Collateral.

B. The Bankruptcy Court shall have entered the Final Order authorizing the DIP Loan under the terms set forth in this Commitment, which Final Order authorizing the DIP Loan shall have a copy of this Commitment attached thereto and incorporated in its entirety by reference, and shall be in form and substance acceptable to Lender in its sole discretion, and which Final Order authorizing the DIP Loan shall not have been appealed**,** modified, stayed, vacated, amended or reversed as further described above.

C. With regard to the Real Property, (i) issuance of a commitment for a lender's title insurance policy ("**Title Commitment**"), issued from a title company acceptable to Lender ("**Title Company**"), in form and substance satisfactory to Lender in its sole and absolute discretion, insuring the Lender's interest in the Real Property is consistent with the terms of this Commitment, without any exception, *inter alia*, for prepetition and post-petition liens or other security interests, claims of mechanic's liens or unpaid "notices to owner" and all conditions contained within the Title Commitment shall have been satisfied to the satisfaction of the Title Company; (ii) delivery to Lender of a property insurance binder approved by Lender showing that the improvements are insured, at Borrower's expense, in an amount not less than the greater of (a) their respective fair market value or (b) their respective replacement cost, and showing Lender as additional insured and loss payee; and (iii) all stop work orders issued by any governmental entity having or asserting jurisdiction with respect to

the Improvements shall have been terminated and the Borrower has demonstrated to the satisfaction of the Lender, in its sole and absolute discretion, that there exists no legal or practical impediment to the immediate recommencement of construction to complete the Improvements in accordance with the plans and specifications thereof.

D. Borrower shall have (i) obtained such orders of the Bankruptcy Court approving the DIP Loan and attendant requirements of this Commitment, in form and content consistent, in Lender's sole and absolute discretion, with the terms of this Commitment, (ii) the Borrower shall have executed a definitive loan agreement, notes, deeds of trust or mortgages, security agreements, and other documentation and customary certificates, consistent with the terms set forth herein and otherwise in form satisfactory to Lender and its counsel; unless any such conditions are waived in Lender's sole and absolute discretion, (iii) Final Order authorizing the DIP Loan shall not have been appealed**,** modified, stayed, vacated, amended or reversed, and shall be in form and substance acceptable to Lender, in its sole and absolute discretion, and shall be made effective immediately without any stay of the effect of such Final Order authorizing the DIP Loan, in Lender's sole and absolute discretion, immediate funding within the provisions and protections of 11 U.S.C. §364 and (iv) in all other respects the status of the Bankruptcy Case is satisfactory to Lender, its counsel and the Title Company in their respective sole and absolute discretion(s).

In addition, Borrower shall have provided Lender evidence satisfactory to Lender and the Title Company that all agreements and documents relating to the DIP Loan have been executed by the Borrower and the party executing such documents has the authority to bind the Borrower. In the event that any portion of the DIP Loan is intended to be used to provide labor, services or materials to the Collateral, the Loan Documents shall provide for such additional protections to the Lender as the Lender may, in its sole and absolute discretion, require pertaining to, inter alia, disbursements of proceeds and conditions precedent to such disbursements. Additionally, Borrower shall provide such other legal opinions as may be required to ensure that the DIP Loan complies with all applicable state and federal legal requirements. All of the foregoing loan agreements, notes, deeds of trust or mortgages, escrow agreements, security agreements, other documentation and customary certificates, and this Commitment, shall be referred to herein, collectively, as the "**Loan Documents**". Each of the Loan Documents shall be in form and substance satisfactory to the Lender and Lender's counsel, in their sole and absolute discretion.

E. The Borrower shall have complied with all of the terms of the Loan Documents and there shall exist no event of default or set of circumstances which given the expiration of time, or the giving of notice would give rise to an event of default under the Loan Documents.

F. The Borrower, at its sole cost and expense, shall provide a survey or “update” of the existing survey of the Collateral, certified in accordance with ALTA standards to Lender and the Title Company prepared by a surveyor licensed by the state in which the Real Property is located, showing such real estate to be free of material encroachments, overlaps and other survey defects, all in accordance with Lender's and Title Company’s survey requirements. Alternatively, Lender may elect to accept the most recent survey available together with an affidavit confirming that there have been no physical modifications to the Collateral since the date of the most recent survey.

G. All parties claiming prepetition or post-petition liens or other interests in the Collateral, including, without limitation, all creditors of the Borrower, all parties with whom the Borrower has an executory contract with respect to the Collateral or the Project and all entities who have filed a Notice to Owner with reference to the Collateral (all such entities being collectively referred to as the “**Parties in Interest**”) shall have received notice of the Motion and the hearing thereon, and (a) all such Parties in Interest shall have consented to, or shall not have objected to, the DIP Loan or (b) any objections of Parties in Interest shall have been specifically overruled in their entirety in the Final Order of the Bankruptcy Court authorizing the DIP Loan.

H. This Commitment is subject to and conditioned upon the accuracy of all information, representations, exhibits and other materials submitted with or in support of the DIP Loan request(s) and there must be no adverse change in the condition, business or prospects of the Collateral or the Borrower prior to the disbursements of funds or during the term of the DIP Loan.

I. After conducting its due diligence including a physical inspection of the Collateral, Lender, in its sole discretion, may choose not to enter into the DIP Loan and terminate this Commitment, for any reason whatsoever.

J. Borrower shall have demonstrated and/or Lender, in its sole discretion, shall have determined that there are no environmental, land use, zoning or other governmental or regulatory issues that will adversely

impact the Collateral in its current “as is, where is” condition, the operations of Borrower or its ability to repay the DIP Loan. Borrower shall have provided the Lender with any and all reports on such issues in its possession. Said reports shall be in form and substance satisfactory to Lender in its sole discretion.

K. The Maximum Loan Amount shall not exceed FIFTY PERCENT (50.00%) of the “As Stabilized” value of the Collateral as reasonably determined by Lender.

L. Borrower shall demonstrate the capability based upon its business plan, in the sole and absolute discretion of the Lender, of repaying the DIP Loan on the Maturity Date.

M. Lender, at its discretion, may waive any one or more of the above-described conditions, but no such waiver shall be effective against Lender unless in writing and signed by an authorized representative of Lender.

N. The cost of all of the foregoing shall be borne by Borrower and, to the extent provided, paid for from the proceeds of the DIP Loan.

**FEES & COSTS:**

A. At the time of the funding of the DIP Loan, from the proceeds of such funding, Borrower shall pay to Lender a commitment fee calculated as FOUR PERCENT (4.00%) of the Maximum Loan Amount (“**<u>Commitment Fee</u>**”), due and fully earned at Closing [as herein defined] of the DIP Loan.

B. In addition, at the time of the funding of the DIP Loan, from the proceeds of such funding, Borrower shall pay (a) all Lender Expenses, (b) all recording costs (including mortgage, stamp or intangible taxes) for filing the recordable Loan Documents, and (c) the cost of the Lender’s title insurance policy (“**<u>Title Policy</u>**”), and the cost of the survey of the Real Property.

D. All costs required to document and perfect Lender’s rights, through to the Closing of the DIP Loan shall be collectively referred to as the “**<u>Closing Costs</u>**”.

**ACCEPTANCE OF COMMITMENT:**

Upon Borrower’s acceptance and execution of this Commitment, and from funds other than that of the Borrower (“**<u>Remitter</u>**”), Remitter shall cause to be paid to Lender from Remitter’s personal funds a loan application fee in the amount of TEN THOUSAND DOLLARS ($10,000) (“**<u>Application Fee</u>**”).

The Application Fee shall be earned upon receipt and shall be paid for the benefit of Debtor but shall be neither an obligation of the Debtor to repay nor an asset in which the Debtor has an interest, and subsequent repudiation of this Commitment by the Borrower or the failure of the Bankruptcy Court to approve the DIP Loan shall entitle neither the Debtor nor the Remitter to a refund of the Application Fee.

In addition, at the Closing of the DIP Loan, the Borrower or Remitter shall pay to Lender a deferred application fee of FORTY THOUSAND DOLLARS ($40,000) ("**Deferred Fee**"), due and fully earned at the Closing of the DIP Loan.

If this Commitment is not terminated by Lender, and upon entry of the Final Order approving the DIP Loan, subject to the terms of this Commitment, a stand-by commitment loan fee in the amount of FOUR PERCENT (4.00%) of the Maximum Loan Amount ("Stand-by Fee") shall be earned by the Lender as follows:

The Stand-by Fee shall be deemed earned by the Lender if, after entry of the Final Order approving the DIP Loan any of the following events occur: (i) the Borrower elects to not enter into the DIP Loan under this Commitment for any reason whatsoever, (ii) the Bankruptcy Court authorizes the Borrower to obtain financing from an existing creditor or other third party lender in lieu of Lender and the financing is provided by such existing creditor or other third party lender, or (iii) the Borrower fails to satisfy any of the material Conditions contained in this Commitment (each of the foregoing being defined as a "**Triggering Event**"). Upon the occurrence of a Triggering Event, the Lender shall have an allowed administrative expense claim in the Bankruptcy Case for the amount of the Stand-by-Fee, and the Lender and the Borrower shall be relieved of any further obligation under this Commitment; provided, however, that in the event the Borrower obtains financing from another lender, creditor or third party, the Stand-by-Fee shall be paid in full, in cash, at the closing of such loan(s). If the DIP Loan is not made by Lender as a result of Lender's election to not enter into the DIP Loan then the Stand-by Fee shall not be recorded as an administrative expense claim in the Bankruptcy Case and the Lender shall receive no other compensation for its services, and the Lender shall then have no further obligation to the Borrower under this Commitment. In the event that, after the filing of this Commitment with the Bankruptcy Court, the Debtor proceeds to obtain alternative financing from a competing lender, the competing lender shall pay to Lender the Stand-by Fee.

This letter will become a Commitment once signed by all parties. This offer by Lender will expire, **July 17, 2026 @ 5:00 PM EST,** time is of the essence. Lender shall have no obligation with respect to the DIP Loan unless and until this Commitment letter is fully executed and received by Lender, and if the Commitment is not terminated under subparagraph A. of the section hereof entitled CONDITIONS.

**CLOSING**: The closing on the DIP Loan shall take place as soon as practical after satisfaction of the Conditions contained herein, in Lender's sole and absolute discretion including, without limitation, entry of the Final Order approving the DIP Loan ("**Closing**"). Each successive disbursement on the DIP Loan shall take place upon satisfaction of the conditions contained herein.

The DIP Loan will be originated by a licensed Michigan Mortgage Broker at the Lender's sole and absolute discretion.

**ASSIGNMENT:** Lender may assign any or all of its obligations and rights hereunder to one or more assignees or participants and may collaterally assign the DIP Loan (or any portion thereto) and/or the Loan Documents to Lender's lender under any existing or future loan arrangement. Lender intends to bring participants into this transaction either as assignees or indirectly as lenders to Lender. Borrower consents to Lender's sale or assignment of all or a portion of the DIP Loan and Borrower agrees to execute any and all agreements and other documents reasonably requested by Lender and Lender's lenders to formalize such assignments of, or participations in, the DIP Loan.

**USURY:** This Commitment is subject to the express condition that at no time shall the Borrower be obligated or required to pay interest at a rate which could subject Lender or its assignees to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If by the terms of this Commitment, and/or any of the Loan Documents evidencing the DIP Loan, the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest hereunder and/or under the note shall be deemed to be immediately reduced to such maximum rate and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of principal balance of the DIP Loan. If Lender deems it a hardship to close the DIP Loan under usury statutes, all fees paid to Lender shall be refunded and this Commitment shall be null and void.

It is also hereby understood and agreed upon by and between the Borrower and Lender that the Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at an effective rate, in excess of the maximum rate allowable under applicable state and federal law. If the effective interest rate does exceed the maximum rate allowable by applicable state or federal law, the Borrower and Lender intend to and hereby agree to reduce the effective interest rate to the maximum rate allowable by applicable state or federal law.

It is further understood and agreed upon by and between the Borrower and Lender that the Lender does not intend, under any circumstances, to charge, collect, assess or receive interest, at the Default Rate's effective rate, in excess of the maximum rate allowable under applicable state and federal law. If the Default Rate's effective interest rate exceeds the maximum rate allowable by applicable state or federal law, the Borrower and Lender intend to and hereby agree to reduce the Default Rate's effective interest rate to the maximum rate allowable by applicable state or federal law.

**CONFIDENTIALITY:** This Commitment is confidential. Until such time as the Commitment has been fully executed by each of the Borrower and the Lender, and the Application Fee has been paid in full by the Remitter, the Borrower shall not disclose the terms or existence of this Commitment to any third party other than its officers, directors, professionals and advisors. In the event that the terms or existence of this Commitment is disclosed to the Bankruptcy Court and/or any third party other than Borrower's officers, directors, professionals and advisors prior to Lender's receipt of the Application Fee from the Remitter, such premature disclosure shall render this Commitment null and void and of no further force or effect. This provision shall survive the termination of this Commitment.

**SURVIVAL OF COMMITMENT:** A copy of this Commitment shall be attached to, and incorporated into, each and every order entered by the Bankruptcy Court with regard to the DIP Loan. To the extent not inconsistent with the other Loan Documents, this Commitment and all of the terms and conditions contained herein shall survive the closing of the DIP Loan and shall remain binding on the Borrower and Lender as part of the Loan Documents, provided, however, that if there should exist any disagreement between the terms of this Commitment and the terms of any of the other Loan Documents, the terms of the Loan Documents shall control.

**EXECUTION AND RELIANCE ON COUNSEL:** This Commitment may be executed in counterparts which, taken together, shall constitute one original. This Commitment is for the benefit of the Borrower only and may not be assigned except upon the prior written consent of Lender, which consent may be withheld for any reason or for no reason. No party other than the Borrower, or an assignee acceptable to Lender may rely upon the terms and conditions of this Commitment. This Commitment is executed by an individual strictly in his capacity as a representative of the Lender. By acceptance of this Commitment, Borrower agrees that no representative, member, partner, shareholder, employee or agent of the Lender shall be personally liable for the payment of any claim or performance of any obligations hereunder. This Commitment will be governed by and construed in accordance with the laws of the State of Michigan and of the United States, without regard to the principles of conflicts of laws thereof. **The Borrower had the benefit of advice of counsel in connection with the execution of this Commitment and the transaction(s) contemplated hereby. This document has been negotiated at arm's length and in good faith between the Lender and the Borrower.**

**NON-WAIVER:** No failure or delay on the part of Lender to exercise any rights under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Loan Documents preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under the Loan Documents or under any document delivered thereunder or in connection therewith or allowed to Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

**OTHER:** The Final Order authorizing the DIP Loan shall expressly provide that the Bankruptcy Court shall retain the fullest jurisdiction over both the Borrower and the DIP Loan until such time as the DIP Loan is irrevocably repaid to the Lender, in full, in cash. The Plan shall not modify, alter or impair the liens and claims of the Lender. The Order shall also contain such waivers as Lender shall require entitling the Lender to immediately foreclose and otherwise enforce rights against the Borrower and the Collateral should the Borrower, either voluntarily or involuntarily, be subject of a subsequent case or proceeding under title 11 of the United States Code, or otherwise default under the DIP Loan or Loan Documents.

As referenced in this Commitment, funding of the DIP Loan is dependent upon, among other things, satisfactory negotiation of the Loan Documents between Borrower and Lender. The

foregoing letter simply sets forth general terms and conditions upon which the Lender would be willing to make the DIP Loan described herein. **This Commitment is not, in and of itself, a document that guarantees funding by the Lender to the Borrower in the amounts set forth herein. Only final Loan Documents and satisfaction of the conditions set forth above will obligate the Lender to fund any portion of the DIP Loan.** Any material deterioration of the financial condition of the Borrower or the condition of the Collateral between the execution of this Commitment and the Closing of the DIP Loan will relieve the Lender of any obligation on the part of the Lender to fund the DIP Loan.

If you find this Commitment to your satisfaction, please execute a copy of this document in the space provided herein below and return the same to the undersigned. Please have the manager of the Borrower execute this Commitment to the Lender, upon the terms and conditions contained in this Commitment.

[SIGNATURE PAGE TO FOLLOW]

We appreciate this opportunity to respond to your financing requirements. If you have questions regarding this letter, please call Mr. Renzo Renzi at (239) 580-7151.

Very truly yours,

**364 CAPITAL, LLC,**

a Delaware limited liability company

By: **364 MANAGER, LLC**,
a Delaware limited liability company

By: ___________________________
Renzo Renzi, Managing Member

**BORROWERS:**

**DISCOUNT WAREHOUSES, LP**,
a Nevada limited partnership

By: ___________________________

Name: ___________________________

Its: ___________________________

# EXHIBIT A

## DIP LOAN BUDGET

| BUDGET ITEMS | $ AMOUNTS |
|---|---|

**Hard & Soft Costs to Complete**

| | |
|---|---|
| **Permits/Site Improvements** | |
| Building Permit | $5,000 |
| Electric Permit | 4,000 |
| Plumbing Permit | 7,000 |
| Temporary Utilities | 12,700 |
| Mechanical Permit | 10,000 |
| ***Total Permits/Site Improvements*** | ***$38,700*** |
| | |
| **Site Improvements** | |
| Asphalt | $40,000 |
| Landscaping | 20,000 |
| ***Total Site Improvements*** | ***$60,000*** |
| | |
| **Exterior** | |
| Windows: Repair/Replace | $3,000 |
| ***Total Exterior*** | ***$3,000*** |
| | |
| **Interior** | |
| Carbon Monoxide Detection | $2,300 |
| Carpet | 55,000 |
| Doors: Interior Hardware | 14,800 |
| Doors: Interior | 48,978 |
| Drywall | 115,000 |
| Electrical: Finish | 25,500 |
| Electrical Outlets | 5,000 |
| Electrical Switches | 2,000 |
| Hot Water Heater | 35,000 |
| HVAC: 220-volt Condenser & Gas Furnace | 20,300 |
| HVAL Install: Finish | 25,500 |
| HVAC Install: Rough | 35,200 |
| Insulation | 25,000 |
| Light Fixtures | 6,500 |
| LVP Flooring | 4,735 |
| Paint Walls/Trim | 40,000 |
| Plumbing: Finish | 25,500 |
| Plumbing: Rough | 3,000 |
| Sewer Jetting | 25,000 |
| Smoke Detectors | 3,100 |

| | |
|---|---|
| ***Total interior*** | ***$517,413*** |
| | |
| **Kitchen** | |
| Cabinets | $52,685 |
| Counters | 19,314 |
| Dishwasher | 17,220 |
| Floors | 8,235 |
| Garbage Disposal | 4,000 |
| Microwave / Hood Vent | 5,100 |
| Refrigerator | 35,700 |
| Sink / Faucet | 10,200 |
| Stove | 28,000 |
| ***Total interior*** | ***$180,454*** |
| | |
| **Bath 1** | |
| Bathtub/Shower | $4,000 |
| Floors | 1,207 |
| Hardware | 5,100 |
| Toilet | 3,300 |
| Vanity & Top | 5,257 |
| ***Total Bath 1*** | ***$18,864*** |
| | |
| **Bath 2** | |
| Bathtub/Shower | $4,000 |
| Floors | 5,000 |
| Hardware | 5,000 |
| Toilet | 3,300 |
| Vanity & Top | 10,200 |
| ***Total Bath 2*** | ***$27,500*** |
| | |
| **Miscellaneous** | |
| Mirrors | $4,080 |
| Miscellaneous | 15,000 |
| ***Total Bath 2*** | ***$19,080*** |
| | |
| **Total Hard & Soft Costs to Complete** | **$865,011** |
| | |
| **Professional Fees** | |
| Legal, Debtor | $50,000 |
| Legal, DIP Lender | 50,000 |

| | |
|---|---|
| U.S. Trustee | 25,000 |
| Appraiser | 10,000 |
| Broker Fee | 16,550 |
| **Total Professional Fees** | **$151,550** |
| | |
| **Other** | |
| Critical Vendor Payments | $150,000 |
| Real Estate Taxes | 10,000 |
| Insurance | 15,000 |
| Application Fee | 10,000 |
| Deferred Fee | 40,000 |
| Closing Costs | 23,814 |
| Contingency | 100,000 |
| ***Total Professional Fees*** | ***$348,814*** |
| | |
| **DIP Loan Costs** | |
| Commitment Fee | $66,200 |
| Loan Servicing Fee | 16,550 |
| Interest Reserve (est. 1-year) | 206,875 |
| ***Total Professional Fees*** | ***$288,625*** |
| | |
| **Maximum Loan Amount** | **$1,655,000** |

# EXHIBIT B
## COLLATERAL

Collateral: The Collateral for the DIP Loan shall include the following:

(a) The real property more particularly described on Exhibit B-1 attached hereto, together with all of the owner's right, title, interest, and privileges in all (i) streets, ways, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the Property or the improvements thereon; (ii) strips or gores of real property between and/or abutting or adjacent properties; and (iii) all water and water rights;

(b) Any and all improvements of any kind or nature situated, placed, or constructed on the Real Property;

(c) All fixtures, materials, supplies, equipment, systems, and apparatus, now or hereafter attached to, installed in, or used in connection with (temporarily or permanently) any of the Real Property or its improvements, including motors, engines, boilers, furnaces, pipes, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating, ventilating, refrigeration, plumbing, laundry, lighting, generating, cleaning, waste disposal, transportation (of people or things, including but not limited to, stairways, elevators, escalators, and conveyors), incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and lighting, traffic control, waste disposal, raw and potable water, gas, electrical, storm and sanitary sewer, telephone and cable television facilities, and all other utilities whether or not situated in easements;

(d) Any and all leases, master leases, subleases, licenses, concessions, and other agreements (whether written or oral, or now or hereafter in effect) which grant to third parties a possessory interest in and to, or the right to use or occupy, all or any part of the Real Property, including all security and other deposits;

(e) All, machinery, goods, general intangibles, money, insurance proceeds, accounts, trademarks, trade names, copyrights, chattel paper, instruments, investment property, letter of credit rights, inventory, deposit accounts or other funds or evidences of cash, credit or indebtedness deposited by or on behalf of owner with any governmental agencies, boards, corporations, providers of utility services, public or private, including reimbursable tap fees, utility deposits, commitment fees and development costs, any awards, remunerations, reimbursements, settlements, or compensation heretofore made or hereafter to be made by any governmental authority pertaining to any of the Collateral, and all other personal property of any kind or character which is now or hereafter situated in, on, or about the Real Property or used in or necessary to the complete and proper planning, development, construction, financing, use, occupancy, or operation thereof;

(f) Any and all contracts, subcontracts, and agreements, written or oral, in any way relating to the construction of the improvements on the Real Property or the supplying of material (specially fabricated or otherwise), labor, supplies, or other services therefor, contracts, licenses, permits, and rights relating to living unit equivalents or other entitlements for water, wastewater, and other utility services whether executed, granted, or issued by a private person or entity or a governmental or quasi-governmental agency, which are directly or indirectly related to, or connected with, the development, ownership, maintenance or operation of the Real Property, whether such contracts, licenses, and permits are now or at any time thereafter existing; and

(g) Any and all other rights of the owner (i) to develop and/or operate the Real Property as a commercial and/or residential project, as the case may be; (ii) in any financing arrangements relating to the financing of or the purchase of all or any portion of the Real Property by future purchasers; and (iii) in all other contracts which in any way relate to the use, enjoyment, occupancy, operation, maintenance, repair, management or ownership of the Real Property.

(h) ANY AND ALL ASSETS OF THE DEBTOR NOW EXISTING OR HEREAFTER ACQUIRED EXCEPT FOR THE DEBTOR'S AND THE ESTATE'S CLAIMS AND CAUSES OF ACTION ARISING UNDER SECTIONS 502(d), 506, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552 OR 553 OF THE BANKRUPTCY CODE, OR ANY FRAUDULENT OR VOIDABLE CONVEYANCE, OR PREFERENCE LAWS UNDER APPLICABLE STATE OR OTHER LAW, AND THE PROCEEDS THEREOF AND ANY OTHER CAUSES OF ACTION CURRENTLY PENDING OR TO BE FILED BY THE DEBTOR OR ANY SUCCESSOR AND THE PROCEEDS THEREOF EXCEPT FOR THE PROCEEDS OF THE FOREGOING THAT IS IN THE FORM OF REAL PROPERTY.

# EXHIBIT B-1

## LEGAL DESCRIPTION FOR REAL PROEPRTY

*[TO BE PROVIDED BY DEBTOR'S COUNSEL]*