UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Discount Warehouses LP

Debtor(s),

Case No: 26-31510
Chapter 11
Honorable Mark A. Randon

# DEBTORS' COMBINED DISCLOSURE STATEMENT AND PLAN

**THIS PLAN AND DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PROPOSED PLAN. PLEASE READ THIS DOCUMENT WITH CARE.**

Prepared By:
Peter T. Mooney (P47012)
Simen, Figura & Parker, PLC
5206 Gateway Centre, Ste 200
Flint, MI 48507
810-235-9000

## I. PLAN

Discount Warehouses, LP, case no. 26-31510 ("Debtor"), proposes the following Plan (the "Plan") pursuant to §§1121 and 1123 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

As used in this Plan, the following terms shall have the meanings specified below, unless the context requires otherwise:

1.1 **"Administrative Claim"** means costs and expenses of administration of the relevant Chapter 11 case allowed under §§503(b) and 507(a) of the Bankruptcy Code and the fees of the United States Trustee under 28 U.S.C. §1930(a)(6).

1.2 **"Administrative Creditor"** shall mean any Creditor who asserts an Administrative Claim.

1.3 **"Allowed Claim"** or "**Allowed Interest**" means a Claim against or Interest in the relevant Debtor to the extent that:

A. A Proof of Claim or Interest was:

1. Timely filed;
2. Deemed filed pursuant to §1111(a) of the Code; or
3. Filed late with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor, and counsel for Debtor; and

B. The Claim is not a Contested Claim or a Contested Interest, or

C. The Claim is allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.4 **"Avoidance Actions"** means all claims granted the debtor-in-possession or a trustee under §§ 544-553 of the Code.

1.5. **"Ballot"** shall mean the official Bankruptcy Form or a document prepared to substantially conform to the same being sent to all creditors and parties-in-interest entitled to vote for or against the Plan.

1.6 **"Bankruptcy Code"** or **"Code"** means the Bankruptcy Reform Act of 1978, as amended (11 U.S.C. §§101, et seq.), also known as the United States Bankruptcy Code.

1.7 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, and any court having jurisdiction over any appeals.

1.8 **"Bankruptcy Rules"** or **"Rules"** means the Federal Rules of Bankruptcy Procedure, and any amendments thereto. To the extent applicable, Bankruptcy Rules also refers to the Local Rules of the U.S. District Court for the Eastern District of Michigan, as amended and the Local Bankruptcy Rules for the Eastern District of Michigan, as amended.

1.9 **"Business Day"** means any day, other than a Saturday, Sunday or "Legal Holiday," as that term is defined in Bankruptcy Rule 9006(a).

1.10 **"Case"** means the relevant above-captioned case currently pending before the Bankruptcy Court.

1.11 **"Claim"** means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Contested, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to

payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12 **"Class"** means a class of holders of Claims or Interests described in Articles II or III of this Plan.

1.13 **"Clio Gardens"** means an apartment complex located at 6914 Clio Court, Flint, MI 48504.

1.13 **"Confirmation Date"** means the date upon which the Bankruptcy Court shall enter the Confirmation Order in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.14 **"Confirmation Hearing"** means the hearing conducted by the Bankruptcy Court to consider the confirmation of the Plan filed by the Proponent.

1.15 **"Confirmation Order"** means the order entered confirming this Plan by the Bankruptcy Court pursuant to §1129 of the Code.

1.16 **"Contested Claim"** means any Claim as to which the relevant Debtor or any other party in interest has interposed an objection or commenced an adversary proceeding in accordance with the Bankruptcy Code, Bankruptcy Rules and this Plan, which objection has not been determined by a Final Order.

1.17 **"Creditor"** means any holder of a Claim against the relevant Debtor.

1.18 **"Debtor"** means the relevant above-captioned chapter 11 debtor.

1.19 **"Effective Date"** means the 30th calendar day after the Confirmation Order becomes a Final Order.

1.24 **"Final Order"** means an Order of the Bankruptcy Court as to which (i) the time for appeal has expired and no appeal has been timely taken; or (ii) any timely appeal has been finally determined or dismissed.

1.25 **"Financing Order"** means the Order, if granted, approving Debtor's motion to approve Debtor in Possession financing filed at docket 63.

1.26 **"Genesee County Litigation"** means the litigation pending the Genesee County Circuit Court, 26-62110, in Flint, Michigan brought by Churchill MRA Funding I, LLC ("Churchill") against the Debtor and its principal, Barry Cohen, which is currently pending against Mr. Cohen, including any proceedings relating to this litigation in other courts.

1.27 **"Impaired"** means a Claim treated under this Plan, unless the Plan:

(a) leaves unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or

(b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default—

(1) cures any such default (other than defaults relating to (i) any penalty interest rate or provision arising from a non-monetary default by the Debtor; (ii) the solvency or financial condition of the Debtor or (iii) the commencement of this Case) that occurred before or after the commencement of the Case;

(2) reinstates the maturity of such Claim or Interest as such maturity existed before such default;

(3) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(4) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles its holder.

1.28 **"Insider"** shall mean a current or former director, shareholder, officer, partner, person in control, relative of a director, officer, partner or person in control of the relevant Debtor or a corporation or entity in which an Insider (as defined above) of the Debtor is an Insider.

1.29 **"Interest Holder"** means the stockholders of the relevant Debtor as of the Petition Date.

1.30 **"Interest"** means an equity interest in the relevant Debtor as defined in §101 of the Code

1.31 **"Interest Rate"** means, unless specified, (a) with respect to Claims entitled to interest under §506 of the Bankruptcy Code and this Plan and having an applicable contractual rate of interest, the lowest rate of interest provided in such contract, without regard to any default by Debtor, (b) with respect to all other Claims entitled to interest under the Bankruptcy Code and this Plan, 5% per annum, or (c) with respect to (a) or (b) such other interest rate as may be determined by a Final Order of the Bankruptcy Court.

1.32 **"Lien"** means a charge against, or an interest in property to secure payment of a debt or performance of an obligation.

1.33 **"New Value"** means such money or money's worth that has been paid or contributed by the Interest Holders for the new stock of the Debtor.

1.34 **"Petition Date"** means the date Debtor filed its Voluntary Petition commencing the Case under Chapter 11 of the Bankruptcy Code.

1.35 **"Plan"** means this Plan as it may be altered, amended or modified from time to time.

1.36 **"Priority Claim"** means a Claim under or entitled to priority under §507(a) of the Code.

1.37 **"Priority Creditor"** means a Creditor who asserts a Priority Claim.

1.38 **"Professional Fees"** means the fees and reimbursement for disbursements owed to attorneys, accountants, or other professionals whose employment has been approved by the Bankruptcy Court.

1.39 **"Secured Claim"** means a Claim secured by a Lien on property in which the estate has an interest but only to the extent of the value of the Creditor's interest in the estate's interest in the property as of the Petition Date.

1.40 **"Unsecured Claim"** means a Claim that is not a Secured Claim, an Administrative Claim nor a Priority Claim.

1.41 **"Unsecured Creditor"** shall mean any Creditor that holds an Unsecured Claim.

## ARTICLE II
## TREATMENT OF CLAIMANTS NOT SUBJECT TO CLASSIFICATION OR OTHERWISE NOT REQUIRED TO VOTE FOR OR AGAINST THE PLAN

For the purposes of approval and implementation of this Plan, Administrative Creditors and Priority Creditors shall be paid on account of their respective Administrative and Priority Claims in accordance with the provisions set forth below:

**2.1 GROUP I.** The Claims of Group I shall consist of all Administrative Expenses, except the claims of taxing authorities that are secured and that qualify as Administrative Expenses. Allowed Administrative Claims shall be paid in full in cash on the Effective Date, or as otherwise agreed by the Debtor and the holder of such claim, or as otherwise ordered by the Court. Without limiting the foregoing, allowed fees and expenses of the Debtor's professionals (including Debtor's counsel) shall be paid only to the extent allowed by final order of the Court upon proper application, with any retainers applied in accordance with such orders. The amounts owed to the United States Trustee shall be paid as they come due, but in no event later than the Effective Date. Administrative expenses include, among other things, costs of administering and consummating the § 363 sales contemplated by this Plan (e.g., broker commissions, closing costs, and related expenses) to the extent allowed and payable from sale proceeds under applicable orders.

2.2 **GROUP II**. The Claims of Group II shall consist of all other Priority Creditors entitled to receive priority for their Allowed Claim under §507(a)(8) of the Bankruptcy Code. Debtor does not believe that any such claimants exist.

2.3 **GROUP III**. The Claims of Group III shall consist of all other Priority Creditors entitled to receive priority for their Allowed Claim under §507(a) of the Bankruptcy Code or otherwise. These claims shall be paid to the extent of available funds after the payment of secured claims, and then after the payment of administrative expenses, and then contemporaneously with the payment of Group II claims. Debtor does not believe that any such claimants exist.

## ARTICLE III

## SPECIFICATION OF TREATMENT OF CLASSES OF CLAIMS OR INTERESTS NOT IMPAIRED UNDER PLAN AND THOSE IMPAIRED UNDER THE PLAN AND GROUPS SET FORTH ABOVE

3.1 The Plan divides Claims and Interests into classes and treats them as follows, all of which are impaired unless noted:

| Class | Claimant(s) | Treatment for Claims in this class |
|---|---|---|
| Class 1 – General Unsecured Claims | All Creditors listed on Schedule F and/or having filed unsecured claims– the largest being Woodson and Bozeman & MAC Holdings. | Allowed General Unsecured Claims shall receive distributions following the refinancing of Clio Gardens described below. These creditors shall be paid 100 percent of their claims. This class is impaired. |
| Class 2 – Holders of Claims Secured by mortgages against Clio Gardens | Churchill MRA Funding 1, LLC | The Debtor's plan is to complete the renovations of Clio Gardens using DIP financing from 364 Capital, LLC subject to a pending motion filed at docket 64. In the interim, Debtor will make monthly payments of $10,000 on or before the 15th of October and November, 2026, of $15,000.00 on or before the 15th of December, 2026 and January, 2027, and $20,000 beginning on February 15, 2027 and continuing on the 15th of each month until the claim is paid as described below. Upon completion of the renovations Debtor shall obtain new financing to satisfy in full the claims of Churchill and the DIP lender. The amount of the Churchill allowed claim may be impacted by |

| | | |
|---|---|---|
| | | proceedings in the Genesee County Litigation. The creditors' liens shall be released upon payment in full. Debtor's deadline to obtain such financing shall be determined by, and subject to, the final order of this Court approving Debtor's motion to approve Debtor in Possession financing filed at docket 64 which will provide for date to satisfy that obligation. This class is impaired. |
| Class 3 – Holders of Claims Secured By Personal Property | Zlur Funding | Zlur Funding shall be paid in full at the time that Clio Gardens is refinanced under the conditions and requirements described above in connection with class 2. This class is impaired. |
| Class 4 – Equity Interests | Barry Cohen and Monitor Capital | Equity interests shall be retained, subject to the terms of this Plan and applicable law, including any required "new value" contributions to the extent necessary for confirmation. |

3.2 **Treatment of 364 Capital, LLC DIP Financing.** Notwithstanding anything in this Plan to the contrary, 364 Capital, LLC (the "DIP Lender") upon approval of Debtor's motion filed at docket 64 shall retain all rights, liens, claims, priorities and remedies granted to it upon approval by this Court of a Final Order authorizing the Debtor to obtain postpetition financing (the "Final DIP Order") and the loan documents executed in connection therewith (the "DIP Loan Documents"). All principal, accrued and unpaid interest, fees, costs, expenses and other amounts owing to the DIP Lender under the Final DIP Order and DIP Loan Documents (collectively, the "DIP Obligations")

shall remain valid, binding and enforceable obligations of the Debtor until indefeasibly paid in full in cash. The liens and security interests granted to the DIP Lender under the Final DIP Order shall remain in full force and effect, with the same validity, extent and priority provided in the Final DIP Order, until the DIP Obligations have been indefeasibly paid in full in cash. Neither Confirmation nor the Effective Date shall extend the maturity of the DIP Loan or otherwise modify the Final DIP Order or DIP Loan Documents. In the event of any inconsistency between this Plan or the Confirmation Order, on the one hand, and the Final DIP Order, on the other hand, the Final DIP Order shall control with respect to the rights and obligations of the DIP Lender. No provision of this Plan or the Confirmation Order shall release, discharge, subordinate, surcharge, impair or otherwise modify the DIP Obligations or the DIP Lender's liens, claims, priorities, rights or remedies without the DIP Lender's prior written consent.

## ARTICLE IV
## EXECUTION AND IMPLEMENTATION OF THE PLAN

4.1 **Funding of the Plan:** Debtor intends to fund this Plan through the existing rent payments of tenants, and the future payments, following financing and completion of the remaining renovations as described in its motion to borrow filed at docket 64. Upon completion of the renovations to Clio Gardens Debtor's intent is to refinance and satisfy the claims in full.

4.2 **Avoidance Actions:** Debtor reserves the ability to assert avoidance actions. It does not appear, however, that any such Avoidance Actions exist.

4.3 **Pre-payment**: The Debtor may, but shall not be obligated to, pre-pay any of the claims at any time in its sole, absolute and unfettered discretion. If the Debtor elects to pre-pay any obligation, it shall not incur any pre-payment penalty, any such pre-payment penalty contained in any pre-petition contract, agreement or document shall not apply

4.4 **Change of Address:** In order to ensure that it receives its distribution, each Creditor holding a Claim must advise the relevant Debtor of any change in address. Absent any such notification, the Debtor will send payments to the addresses listed on the Matrix on file with the Bankruptcy Court. If the Debtor does not receive notice of any change of address, it shall be under no obligation to pay the amounts due under the Plan.

## ARTICLE V

## EFFECT OF CONFIRMATION

**5.1** Confirmation shall act as a merger and relinquishment of any and all Claims that Creditors have or may have against the Debtors as provided in the treatment of the Creditors and the entities listed in Articles II and III.

## ARTICLE VI

## MODIFICATION OF THE PLAN

**6.1** Debtor may, from time to time, propose amendments or modifications of this Plan prior to its confirmation, without leave of the Court. After confirmation, the Debtor may, with leave of the Bankruptcy Court, and upon notice and opportunity for hearing to the affected Creditor(s) and any committee appointed by the Office of the U.S.

Trustee only, remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Order of Confirmation or otherwise modify the Plan.

**6.2** If the Bankruptcy Court determines that the modification affects all the Creditors, or if the Debtors propose a material modification affecting all Creditors, then such modification shall be governed by §1127 of the Bankruptcy Code and the Plan.

## ARTICLE VII

## JURISDICTION OF THE COURT

This Court shall retain jurisdiction in this matter until the Plan has been fully consummated including, but not limited to, the following reasons and purposes:

A. The classification of the Claim of any Creditor and the re-examination of Claims which have been allowed for purposes of voting, and the determination of such objections as may be filed to Claims of Creditors. The failure by the Debtors to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of any right to object to, or reexamine the Claim in whole or in part.

B. The determination of all questions and disputes regarding title to the assets of the estates or Debtors, and all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtors or any other party. This shall include, but not be limited to, any cause of action, avoiding power or right of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code, including, without limitation, Avoidance Actions and claims initiated under §§506 and 510 of the Bankruptcy Code.

C. The correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.

D. The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code and as provided in the Plan.

E. The enforcement and interpretation of the terms and conditions of this Plan and the entry of orders in support of confirmation of this Plan.

F. The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of Debtors or any party-in-interest, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary, including without limitation, injunctions to enforce releases or forbearance in favor of guarantors, which would assist the Debtors to accomplish their obligations under the Plan.

G. The review and approval of all professional fee applications for services rendered prior to the Confirmation Date and the review of any professional fees for services rendered in connection with the Plan after the Confirmation Date, to the extent that the Debtors dispute all or a portion thereof.

H. The entry of an order concluding and terminating this Case.

## ARTICLE VIII

## TITLE TO PROPERTY

8.1 All assets of the Debtor shall revest in the Debtor upon Confirmation.

## ARTICLE IX

## UNITED STATES TRUSTEE FEES

9.1 The Debtors shall timely pay to the United States Trustee all fees payable under section 1930 of Title 28 of the United States Code after the Effective Date on a quarterly basis until these Chapter 11 cases are closed, converted, or dismissed. Fees due the United States Trustee as charges assessed against the estate under chapter 123 of Title 28 are not expenses of administration but are entitled to priority pursuant to 11 U.S.C. § 507(a)(2).

## ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1 Unless addressed in Article III of this Plan or otherwise assigned, assumed or rejected by Final Order of the Bankruptcy Court, all executory contracts and unexpired leases of the Debtors either (i) not expressly assigned, assumed or rejected or (ii) which are not within thirty (30) days after the Confirmation Date the subject of pending applications to reject or assume or assign, shall be deemed rejected. Within thirty (30) days after the Confirmation Date, the Debtors shall be allowed to file a Notice of Rejection (the "Notice") with the Bankruptcy Court and the executory contract or unexpired lease which is the subject thereof shall thereupon be rejected. Debtors may file a motion to assume, assign or reject any executory contracts or unexpired leases within 30 days after the Confirmation Date, for which the Bankruptcy Court shall retain jurisdiction.

10.2 Any Creditor who has a Claim as a result of such rejection shall have thirty (30) days after receipt of the Notice of Rejection to file a Proof of Claim, failing which such Claim shall be disallowed in its entirety. The Notice shall contain a provision informing any potential creditor of this requirement and shall be served on such potential creditor(s).

## ARTICLE XI

## OBJECTIONS TO CLAIMS

11.1. Debtor and parties in interest may object to the allowance of any Claim, whether listed on the schedules filed by Debtor or filed by any entity. No time limit for such objections is being created by this Plan.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1. Notwithstanding anything in this Plan to the contrary, neither relevant Debtor shall be obligated to make any payments towards any Contested Claim. Further, Debtor shall not be required to make any payments for an Allowed Claim to any Creditor if the relevant Debtor has filed a motion, objection, adversary proceeding, state court proceeding or other similar notice against such Creditor alleging an objection, claim, cause of action, offset or counter-claim, such that if sustained and not paid by such Creditor would result in a disallowance or adjustment of such Allowed Claim in accordance with §502(d) of the Code.

12.2. The Debtor and all parties-in-interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to

memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor of UCC financing statements and the execution by creditors of any UCC termination and mortgage releases and termination.

12.3. This Plan and the Confirmation Order shall inure to the benefit of, and be binding upon, all parties in interest and their respective successors and assigns.

12.4 In the event of conversion of this case post-confirmation, all property that vested in the Debtors or any successors to the Debtors under 11 U.S.C. §1141 or that was otherwise acquired post-confirmation will become property of the Chapter 7 estate.

## DISCLOSURE STATEMENT

## II. DESCRIPTION OF DEBTOR

Debtor Discount Warehouses LP is a Nevada limited partnership that owns the Clio Gardens Apartments located at 6914 Clio Court in Flint, Michigan.

### A. The Debtor-In-Possession

On June 26, 2026, (the "Petition Date"), Debtor Discount Warehouses, LP filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code, §§101 et seq. in the United States Bankruptcy Court for the Eastern District of Michigan, case no. 26-31510. This case was originally assigned to the Honorable Joel D. Applebaum and then reassigned to the Honorable Mark A. Randon.

### B. Debtor's Principal and Management

*Background*

Barry Cohen is the controlling partner of the Debtor. Mr. Cohen's educational and practical background makes him well-qualified to see this project to fruition. He has a bachelor's in engineering from the University of California Los Angeles (UCLA) earned

in 1971, a MBA from UCLA/SUNY Buffalo earned in 1973 and a Masters in Real Estate Development from the University of Southern California (USC) earned in 1989. Mr. Cohen, through various entities, has developed hundreds of rental properties in his career.

*Compensation*

Mr. Cohen has received no wages from Debtor from its inception. He has contributed funds toward its operations and has received some payments in return prior to this case being filed.

### C. Description of Debtor's Business and Causes for Chapter 11 Filing

Discount Warehouses acquired Clio Gardens Apartments, formerly known as Clio Woods Apartments, on January 2, 2014, for $2,900,000, as part of a tax deferred exchange. At that time, the 84 units apartment units were one hundred percent vacant and needed major renovation. The prior owner had initially been to maintain an occupancy of at least ninety percent until its entire portfolio of properties was lost due to a nationwide economic downturn that began in 2008. After the prior owner lost the properties to foreclosure, the existing tenants were evicted and the property deteriorated in part due to water exposure causing mold issues.

Since purchasing the Clio Gardens, Discount Warehouses has made significant progress in renovating the property. Upon taking title to the property Discount Warehouses took steps to preserve the asset. Roof and perimeter fence repairs were performed, mold was removed from the apartment unit interiors, exterior lighting fixtures and video surveillance cameras were installed and outside patrol service was employed.

With its very large two and three-bedroom apartments having two full bathrooms and washer/dryer connections, Clio Gardens holds a competitive advantage over local apartment area properties in the same rental range. State and federal housing agencies have inspected the subject property and are anxious to refer applicants on their waiting lists when additional apartments units have been renovated and are ready for occupancy.

Barry Cohen, the controlling partner of Discount Warehouses, has extensive experience in operating and renovating affordable apartment properties in marginal or transitional areas nationwide (see Mr. Cohen's professional bio attached as exhibit A).

Due to prior commitments to other developments major renovation did not commence on Clio Gardens until a loan from A&S Capital, LLC in the amount of $2,876,881 was provided on April 7,2021. At that time, the initial renovation budget was $1,699,500. Due to significant price increases resulting from the global supply chain disruptions caused by the Covid 19 pandemic, and a greater scope of work needed than initially anticipated (i.e. replacement of mold-affected wood studs in kitchen walls), the initial budget became insufficient.

While A&S Capital, LLC, and its two assignees, Emilion Capital, LLC and subsequently Churchill MRA Funding I, were kept informed about the renovation, they were unwilling to fund the balance of the loan amount needed to complete the work and instead charged excess loan extension fees, which was double the industry practice. At a tremendous inconvenience, Barry Cohen had no other choice but to sell a portion of his interest in Discount Warehouses for $ 400,000 and advance those funds to Debtor, on the basis that those funds would be reimbursed soon when a new renovation loan was in place. After reaching out to over twenty potential bridge lenders, Discount Warehouses

received loan quotes from $4,225,000 to $4,550,000. Those amounts were sufficient to pay off the existing loan balance and provide funding for additional renovation work. Churchill received those loan. Notwithstanding the fact that the new loan closing was expected to occur soon, Churchill reversed its position on cooperation, and commenced foreclosure. Discount Warehouses had no other choice but to file its petition for Chapter 11 bankruptcy reorganization.

## III. POST-PETITION EVENTS OF SIGNIFICANCE

### A. Post-Petition Transfers Outside the Ordinary Course of Business

Debtor has made no post-petition transfers outside the ordinary course of business.

### B. Chapter 11 Events

This Disclosure Statement is not designed to provide a full, detailed description of the motions filed and orders entered or other developments in the bankruptcy proceeding. Further, the Disclosure Statement does not address every motion filed or order entered in the proceeding. Rather, the Disclosure Statement merely provides a summary of the major motions filed or orders entered. Creditors are urged to review the bankruptcy court docket, which outlines every document filed in the bankruptcy case, and the bankruptcy court file, which contains all of the filed documents.

*Cash Collateral and Adequate Protection*

Debtor filed a first day motion to permit the use of cash collateral early in the case, and presently operating under a fourth interim order. Debtor also filed a motion to borrow at docket 64 seeking Debtor in Possession financing from 364 Capital, LLC which is pending before this Court.

Motion to Dismiss

Churchill filed a motion to dismiss which is pending before this Court with the next hearing scheduled for October 5, 2026.

The Plan and Disclosure Statement

Debtor is filing this Disclosure Statement and Plan.

**C. Pending and Contemplated Litigation Involving Debtor**

The only pending litigation is the Genesee County Litigation filed by Churchill, which is pending as to Debtor's principal, Barry Cohen. Mr. Cohen may seek to remove that litigation to federal court and to file counter-claims. As noted above, it is Debtor's position that should the outcome of this litigation result in a settlement or judgment that adjusts the amount due to Churchill that that outcome shall be binding this case.

**Insider Transactions**

As previously stated, Mr. Cohen is the controlling partner of Debtor and a guarantor of the Churchill loan.

**IV. ASSETS AND LIABILITIES**

**A. Liquidation Analysis**

Debtor's Liquidation Analysis is attached as exhibit B. It is Debtor's position that upon forced sale the Property would not satisfy the secured claims.

**B. Risks, Conditions and Assumptions In Liquidation Analysis**

Debtor has used fair market value to determine the value of its assets. The basis for the valuations for the real estate are based on Mr. Cohen's experience as a real estate investor and his educational background as an MBA as well as a 2024 appraisal performed by Bowery Valuation and updated appraisal expected shortly.

### C. Causes of Action

As previously stated, there is no pending or contemplated litigation involving the Debtor though Debtor asserts that the Genesee County Litigation may impact Churchill's claim.

### D. Priority and Secured Claims

Debtor has secured claims of approximately $3,000,000, and no priority claims.

### E. Unsecured Claims

Debtor has schedule 9 unsecured claims scheduled in the total amount of $388,974.95.

- **Guaranteed Debt**

Debtor's principal, Barry Cohen, is a guarantor of the Churchill mortgage debt.

## V. IMPLEMENTATION OF PLAN

### A. Summary

See Articles II and III of the Debtors' Plan set forth above.

### B. Financial Information

The information contained in this Disclosure Statement has not been subject to a certified audit. The information has been compiled from the records of Debtor and is true and accurate to the best of Debtor's knowledge, information and belief.

Debtor will provide as an exhibit a summary of the relevant Debtor's financial information relating to the Debtor's post-petition operations. Debtor has attached a summary of Debtor's financial condition, as exhibit C prior to the commencement of Debtor's bankruptcy proceeding.

### C. Post-Petition Details

Debtor proposes to continue its operations with the same management until the properties have been liquidated. It is contemplated that Barry Cohen who manages the Debtor, shall receive no compensation, whether in the form of salary or fringe benefits other than distributions which would only be paid if Debtor is current on all obligations. Since the Petition Date, Mr. Cohen has not received any compensation. Debtor is attaching projections for the proposed length of this plan, 18 months, as exhibit D. Those projections made contemplating the approval of the financing motion and the ability to obtain full occupancy at Clio Gardens.

E. **Tax Ramifications**

1. **To Debtor**

Debtor does not anticipate any tax ramifications arising from confirmation.

2. **To Creditors**

The tax consequences to each Creditor resulting from confirmation of the Plan may vary depending upon each Creditor's particular circumstances. Each Debtor recommends that creditors or holders of Claims obtain independent tax counsel to advise them as to the tax consequences of the Plan.

*The following quoted language is required in the Chapter 11 Plan.*

*"VI. LEGAL REQUIREMENTS*

*A. Voting procedures*

*Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interest, that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan.*

*Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.*

*Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. section 502 and Bankruptcy Rule 3018.*

*Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the debtor's attorney by the deadline previously established by the court.*

*Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted.*

*A ballot that is not received by the deadline will not be counted.*

*If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the debtor's attorney.*

*B. Acceptance*

*The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two thirds in dollar amount, and more than one half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.*

*C. Confirmation*

*11 U.S.C. section 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.*

*Among the several conditions for confirmation of a plan under 11 U.S.C. section 1129(a) are these:*

1. *Each class of impaired creditors and interest must accept the plan, as described in paragraph VI.B., above.*

2. *Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.*

D. *Modification*

*The debtor reserves the right to modify or withdraw the plan at any time before confirmation.*

E. *Effect of confirmation*

*If the plan is confirmed by the Court:*

1. *Its terms are binding on the debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.*

2. *Except as provided in the plan:*

   (a) *In the case of a corporation that is reorganizing and continuing business:*

      (1) *All claims and interests will be discharged.*

      (2) *Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.*

   (b) *In the case of a corporation that is liquidating and not continuing its business:*

      (1) *Claims and interests will not be discharged.*

      (2) *Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.*

   (c) *In the case of an individual or husband and wife:*

      (1) *Claims will be discharged, except as provided in 11 U.S.C. sections 523 and 727(a).* ***Unless the court orders otherwise, the discharge will be entered after***

***completion of plan payments as provided in section 1141(d)(5)(a). It is the usual practice of the court to close Chapter 11 cases after confirmation. It is the responsibility of the individual debtor to file a motion to reopen the case for entry of discharge upon completion of plan payments.***

(2) *Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. sections 523 and 727(a).*

*See Part IIA of this Disclosure Statement to determine which of the above paragraphs applies in this case."*

Because the case involved a limited partner, Section 2(c) does not apply.

By Barry Cohen
Barry Cohen (Sep 23, 2026 13:26:44 PDT)

Barry Cohen, Controlling Partner

Dated: September 23, 2026

Prepared By:

By: /s/ Peter T. Mooney
Peter T. Mooney (P47012)
Simen, Figura & Parker, PLC
5206 Gateway Centre, Ste 200
Flint, MI 48507
810-235-9000

Dated: September 23, 2026

# Exhibit A

**BARRY COHEN**
**7065 W. Ann Rd., Ste. # 130-683**
**Las Vegas, NV 89130**
**(702) 872-7056**

**EDUCATION (DEGREES):**

University of Southern California, Los Angeles, CA
**Masters in Real Estate Development, May 1989**

University of California, Los Angeles, CA/SUNY at Buffalo
**Masters in Business Administration, September 1973**

University of California, Los Angeles, CA
**Bachelors of Science in Engineering, June 1971**

**EXPERIENCE:**

**Lloyd's Development Co. / 21st Century Communities, Inc.**
**Las Vegas, NV** 1978-Present
As President responsible for the acquisition and management of residential and commercial properties. Experience includes the operation and renovation of over 3,500 low-income housing units, 400,000 square feet of retail space and 1.2 million square feet of industrial warehouse space.

**H. Bruce Hanes, Inc**.
**Beverly Hills, CA** 1976-1978
Licensed real estate agent and Senior Analyst with this multi-office apartment sales brokerage firm. "Top Salesperson of the Year" for 1977 (out of a sales force of 100 plus agents).

**Roberts Consolidated Industries**
**Santa Fe Springs, CA** 1974-1975
As Marketing Analyst reviewed competitors products and pricing strategies. Conducted market surveys to ascertain customer preferences.

**Litton Industries**
**Buffalo, New York** 1972-1973
As Financial Analyst prepared financial forecasts based on various sales growth plans of its Buffalo subsidiary.

**AWARDS AND HONORS:**

Dean's List (UCLA)
Graduated Cum Laude (UCLA)
Graduated Beta Gamma Sigma (SUNY)
Honorable Mention Award (USC)

# Exhibit B

Liquidation

| Collateral | Secured Creditor | Market Value/Forced Sale | Approx. Amount of Secured Claims | Equity Fair Market | Equity Forced |
|---|---|---|---|---|---|
| Real Estate: 6914 Clio Court | Churchill MRA I Funding | 4,600,000.00 (Fair Market Value) $2,300,000.00 (forced sale range -- the forced sale equity being a maximum amount) | $3,002,045.43 | $1,597,954.57 | -$702,045.43 |
| Miscellaneous Office Equipment | Zlur Funding | $800.00 (Fair Market) $200 (forced sale) | $3,010,563.03 | 0 | 0 |
| Money In Accounts | Churchill MRA I Funding and Zlur Funding | $5,000.00 | $3,010,563.03 | 0 | 0 |
| Total Fair Market | Total Fair Market | $4,605,800.00 | | | |
| Total Forced Sale | Total Forced Sale | $2,305,200.00 | | | |

| Post Petition Liabilities | |
|---|---|
| Estimated Administrative Claim | $30,000.00 |

| Pre-Petition Liabilities | |
|---|---|
| Secured Claims | $3,010,563.00 |
| Unsecured Claims | $388,974.95 |

| Distribution in Chapter 7 Case | |
|---|---|
| Gross Proceeds | $2,305,200.00 |
| Secured Claims | 3,010,563.03 |
| Adminstrative Expenses | $30,000.00 |
| Total Unsecured | $388,974.95 |
| Net to Unsecureds in Chapter 7 | -$1,124,337.98 |

# Exhibit C

**Discount Warehouses, LP DBA Clio Gardens Apartments**

**Profit and Loss Statement**

**June 26, 2023 through June 25, 2024**

Income

| | | |
|---|---|---|
| Misc. Income | $ 1,880.00 | |
| Rental Income | $ 3,059.00 | |
| Total Income | $ 4,939.00 | $ 4,939.00 |

Expenses

| | | |
|---|---|---|
| Travel Reimbursement | $ 497.80 | |
| Internet Service | $ 2,210.18 | |
| Software costs | $ 840.00 | |
| Insurance | $ 6,380.54 | |
| Landscaping | $ 1,000.00 | |
| Consultant | $ 8,336.96 | |
| A. Dunnigan | $ 1,400.00 | |
| Misc. | $ 9,636.00 | |
| MI state payroll tax | $ 415.00 | |
| Legal fees | $ 3,387.00 | |
| Electricity/Gas | $ 17,088.44 | |
| Water/Sewer | $ 4,475.78 | |
| Trash | $ 485.00 | |
| Building maintenance | $ 1,800.00 | |
| Total Expenses | $ 57,952.70 | $ 57,952.70 |

Net Operating Income (NOI) - $ 53,013.70

Capitalized Renovation Expenditures

| | |
|---|---|
| Willard G McIntosh | $ 12,176.35 |
| Waltz Finishing | $ 13,857.60 |
| Rich Brothers | $ 24,693.45 |
| Windows | $ 14,118.00 |
| Inspections | $ 1,600.00 |
| JG Contracting | $ 489,679.00 |
| Equipment rental | $ 23,621.50 |
| Electrical work | $ 176,027.99 |
| Plumbing work | $ 68,728.01 |
| Architectural | $ 5,000.00 |

| | | | |
|---|---|---|---|
| | Shipping | $ 2,865.00 | |
| | Hauling | $ 5,595.00 | |
| | Supplies | $ 42,299.15 | |
| | Misc. | $ 34,249.87 | |
| | Total Expenditures | $ 914,510.92 | $ 914,510.92 |
| Financing Costs | | | |
| | Tristate Capital | $ 50,000.00 | |
| | Emilion Capital | $ 226,060.03 | |
| | Total Financing Costs | $ 276,060.13 | $ 276,060.13 |
| Cash Flow | | | - $ 1,243,584.75 |

## Discount Warehouses, LP DBA Clio Gardens Apartments

## Profit and Loss Statement

## June 26, 2024 through June 25, 2025

| | | |
|---|---|---|
| Income | | |
| Rental Income | $ 212,333.47 | |
| Total Income | $ 212,333.47 | $ 212,333.47 |
| Expenses | | |
| Internet Service | $2,193.34 | |
| Bank service charges | $285.00 | |
| Postage/delivery | $ 32.00 | |
| Insurance | $ 7,502.21 | |
| Landscaping | $ 2,957.00 | |
| Consultant | $ 800.00 | |
| Management fees | $ 31,420.08 | |
| Accounting | $ 5,629.50 | |
| Misc. | $ 2,338.42 | |
| MI state payroll tax | $ 1,779.45 | |
| Electricity/Gas | $ 44,529.57 | |
| Water/Sewer | $ 9,509.53 | |
| Trash removal | $ 2,733.88 | |
| Building maintenance | $ 990.00 | |
| Total Expenses | $ 112,699.98 | $ 112,699.98 |
| Net Operating Income (NOI) | | $ 99,633.49 |
| Capitalized Renovation Expenditures | | |
| JG Contracting | $ 468,519.35 | |
| Woodson Bozeman | $ 19,938.23 | |
| Equipment rental | $ 3,425.20 | |
| Plumbing work | $ 39,780.00 | |
| License & permits | $ 11,976.00 | |
| Hauling | $ 6,344.78 | |
| Supplies | $ 43,492.13 | |
| Misc. | $ 22,420.44 | |
| Total Expenditures | $ 615,896.13 | $ 615,896.13 |

Financing Costs

| | | |
|---|---|---|
| Finance Fee | $ 5,500.00 | |
| Appraisal | $ 5,692.50 | |
| Grant Funds LLC | $ 5,000.00 | |
| Verus Capital | $ 3,000.00 | |
| Emilion Capital | $ 208,768.93 | |
| Total Financing Costs | $ 227,961.43 | $ 227,961.43 |

Cash Flow - $ 744,224.07

## Discount Warehouses, LP DBA Clio Gardens Apartments

## Profit and Loss Statement

## June 26, 2025 through June 25, 2026

| | | | |
|---|---|---|---|
| Income | | | |
| | Misc. Income | $ 1,133.81 | |
| | Rental Income | $ 272,842.58 | |
| | Total Income | $ 273,976.39 | $ 273,976.39 |
| Expenses | | | |
| | Internet Service | $ 3,439.95 | |
| | Bank service charges | $ 125.99 | |
| | Insurance | $ 11,798.73 | |
| | Consultant | $ 2,254.00 | |
| | Misc. | $ 9,403.00 | |
| | Legal fees | $ 10,000.00 | |
| | Telephone | $ 426.57 | |
| | Electricity/Gas | $ 50,354.56 | |
| | Water/Sewer | $ 16,528.56 | |
| | Trash removal | $ 3,767.04 | |
| | Building maintenance | $ 13,664.07 | |
| | Total Expenses | $ 121,762.47 | $ 121,762.47 |
| Net Operating Income (NOI) | | | $ 152,213.92 |
| Capitalized Renovation Expenditures | | | |
| | JG Contracting | $ 25,401.30 | |
| | Woodson Bozeman | $ 9,600.84 | |
| | Hauling | $ 5,425.00 | |
| | Supplies | $ 3,175.00 | |
| | Misc. | $ 2,841.77 | |
| | Total Expenditures | $ 46,443.91 | $ 46,443.91 |
| Financing Costs | | | |
| | Emilion Capital | $ 39,479.60 | |
| | Total Financing Costs | $ 39,479.60 | $ 39,479.60 |
| Cash Flow | | | $ 66,290.41 |

# Exhibit D

Discount Warehouses Projected Monthly Budget (based on approval of DIP motion and completion of work in 2027)

**Calendar Year** **2027**

| | January | February | March | April | May | June | July | August | Sept | October | Nov | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Rents** | $34,000.00 | $38,900.00 | $40,000.00 | $42,000.00 | $44,000.00 | $46,000.00 | $50,000.00 | $55,000.00 | $80,000.00 | $91,800.00 | $91,800.00 | $91,800.00 |
| **Expenses** | | | | | | | | | | | | |
| Taxes | $800.00 | $840.00 | $882.00 | $926.10 | $972.41 | $1,021.03 | $2,083.33 | $2,083.33 | $2,083.33 | $2,083.33 | $2,083.33 | $2,083.33 |
| Internet | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 | $260.00 |
| Telephone | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 | $250.00 |
| Software | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 | $300.00 |
| Property Insurance | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 | $1,200.00 |
| Leasing Commissions | $1,500.00 | $1,575.00 | $1,653.75 | $1,736.44 | $1,823.26 | $1,914.42 | $2,010.14 | $2,110.65 | $3,750.00 | $3,750.00 | $3,750.00 | $3,750.00 |
| Trash | $300.00 | $315.00 | $330.75 | $347.29 | $364.65 | $382.88 | $402.03 | $422.13 | $443.24 | $465.40 | $488.67 | $513.10 |
| Utilities | $6,500.00 | $6,825.00 | $7,166.25 | $7,524.56 | $7,900.79 | $8,295.83 | $8,710.62 | $9,146.15 | $9,750.00 | $10,237.50 | $10,749.38 | $11,286.84 |
| Landscaping | $700.00 | $735.00 | $771.75 | $810.34 | $850.85 | $893.40 | $938.07 | $984.97 | $1,034.22 | $1,085.93 | $1,140.23 | $1,197.24 |
| Apartment Turnover/Maintenance | $7,000.00 | $7,350.00 | $7,717.50 | $8,103.38 | $8,508.54 | $8,933.97 | $9,380.67 | $9,849.70 | $10,342.19 | $10,859.30 | $11,402.26 | $11,972.38 |
| Churchill Payment | $15,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 |
| **Net** | **$190.00** | **$90.00** | **$350.00** | **$1,468.00** | **$2,541.90** | **$3,569.50** | **$6,548.47** | **$10,476.39** | **$32,670.36** | **$43,391.87** | **$42,259.47** | **$41,070.44** |

**First Six Months** **2028**

| | January | February | March | April | May | June |
|---|---|---|---|---|---|---|
| **Rents** | $93,636.00 | $93,636.00 | $93,636.00 | $93,636.00 | $93,636.00 | $93,636.00 |
| **Expenses** | | | | | | |
| Taxes | $2,187.50 | $2,231.25 | $2,275.88 | $2,321.39 | $2,367.82 | $2,415.18 |
| Internet | $260.00 | $265.20 | $270.50 | $275.91 | $281.43 | $287.06 |
| Telephone | $250.00 | $255.00 | $260.10 | $265.30 | $270.61 | $276.02 |
| Software | $300.00 | $306.00 | $312.12 | $318.36 | $324.73 | $331.22 |
| Property Insurance | $1,200.00 | $1,224.00 | $1,248.48 | $1,273.45 | $1,298.92 | $1,324.90 |
| Leasing Commissions | $3,750.00 | $3,825.00 | $3,901.50 | $3,979.53 | $4,059.12 | $4,140.30 |
| Trash | $465.40 | $474.71 | $484.20 | $493.88 | $503.76 | $513.84 |
| Utilities | $10,237.50 | $10,442.25 | $10,651.10 | $10,864.12 | $11,081.40 | $11,303.03 |
| Landscaping | $1,085.93 | $1,107.65 | $1,129.80 | $1,152.40 | $1,175.45 | $1,198.95 |
| Apartment Turnover/Maintenance | $10,859.30 | $11,076.48 | $11,298.01 | $11,523.97 | $11,754.45 | $11,989.54 |
| Churchill Payment | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 | $20,000.00 |
| **Net** | **$43,040.37** | **$42,428.46** | **$41,804.31** | **$41,167.68** | **$40,518.31** | **$39,855.96** |