**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-31510-mar<br>Chapter 11 |
| Discount Warehouses, LP, | |
| Debtor. | Hon. Mark A. Randon |

______________________________________

**MOTION OF CHURCHILL MRA FUNDING I LLC FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(3)(A)**

Churchill MRA Funding I LLC ("Churchill"), by and through its undersigned counsel, hereby moves this Court, pursuant to section 362(d)(3)(A) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order granting relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code with respect to the real property commonly known as Clio Gardens Apartments, located at 6914 Clio Court, Flint, Michigan 48504 (the "Property") (the "Motion"). In support of the Motion, Churchill states as follows:

## PRELIMINARY STATEMENT

This is a single asset real estate case within the meaning of 11 U.S.C. § 101(51B). The Debtor's sole asset is the Property, which generates substantially all of the Debtor's income, and the Debtor conducts no substantial business other than operating the Property. Section 362(d)(3) of the Bankruptcy Code accordingly

requires that, no later than the date that is 90 days after entry of the order for relief (or such later date as the Court may determine for cause), the Debtor either commence monthly payments to Churchill under section 362(d)(3)(B) or file "a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time." 11 U.S.C. § 362(d)(3)(A). That 90-day deadline expired on September 24, 2026.

The Debtor filed a plan of reorganization and disclosure statement on September 23, 2026 [Doc 86] (the "Plan"), one day before the section 362(d)(3) deadline. However, the Plan does not meet the standards of section 362(d)(3)(A) because it depends entirely on the Court's approval of a contested, not-yet-approved motion to obtain postpetition financing from a third-party lender, on the completion of renovations that the Debtor has been unable to complete for several years, and on the Debtor's ability thereafter refinance its obligations in an amount sufficient to pay Churchill, the DIP lender, and all other creditors in full. Each of these steps is speculative, contested, or entirely outside the Debtor's control. The Plan's own liquidation analysis reflects that the Property, at a forced-sale value, would not satisfy Churchill's secured claim, leaving the Debtor with no equity cushion and no alternative means of reorganization if any of the links in this speculative chain fails. On this record, the Debtor cannot meet its burden under section 362(d)(3)(A), and Churchill is entitled to relief from the automatic stay.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The legal predicate for the relief requested herein is 11 U.S.C. § 362(d)(3)(A).

5. On September 28, 2026, the undersigned counsel emailed Debtor's counsel on Churchill's behalf seeking concurrence in the relief sought in this Motion, and Debtor's counsel responded declining to concur.

## BACKGROUND

### *The Chapter 11 Case and the Property*

6. On June 26, 2026 (the "Petition Date"), Discount Warehouses, LP (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned case.

7. The Debtor operates a single asset, an apartment complex known as "Clio Gardens Apartments," located at 6914 Clio Court, Flint, Michigan 48504 (the "Property"), which constitutes the Debtor's sole business and its only material asset. The Debtor is a Nevada limited partnership controlled by its principal, Barry Cohen

("Cohen"). The Debtor generates substantially all of its income from the Property and conducts no substantial business other than operating the Property and activities incidental thereto. The Property therefore constitutes "single asset real estate" within the meaning of 11 U.S.C. § 101(51B), and in its voluntary petition, the Debtor properly identified this case as a single asset real estate case subject to 11 U.S.C. § 362(d)(3).

8. Churchill holds a duly perfected first-priority mortgage encumbering the Property, together with an absolute and irrevocable assignment of all rents, issues, revenues, income, proceeds, royalties, profits, and other benefits derived from the Property (the "Rents"). As of the Petition Date, the Debtor's outstanding obligations to Churchill totaled not less than $3,002,045.43, exclusive of attorneys' fees and costs, with non-default interest continuing to accrue at not less than $12,000 per month.[1] The Debtor's own Plan reflects secured claims of approximately $3,010,563.03 against the Property as of the date of filing.

9. Prior to the Petition Date, the Debtor defaulted under its loan documents with Churchill by, among other things, failing to make required monthly interest payments for February and March 2026, and by failing to pay property taxes

[1] On the Petition Date, the default interest rate of 17 percent per anum was in effect. Churchill does not waive its right to continue to charge the Debtor or any guarantors the default interest rate unless superseded by an order of this Court or another court of competent jurisdiction.

assessed against the Property since 2024. Since the default, the Debtor has made only nominal payments to Churchill.

10. On April 13, 2026, prior to the Petition Date, Churchill commenced a foreclosure action against the Debtor in the Genesee County Circuit Court, State of Michigan (Case No. 26-62110-CB) (the "Genesee County Litigation"), together with a motion to appoint a receiver, which motion was pending and stayed as of the Petition Date. The Genesee County Litigation remains pending and, according to the Debtor's own Plan, may affect the amount of Churchill's allowed claim.

***The Disputed Valuation and Absence of Equity***

11. Throughout this case, Churchill has objected that the Debtor has failed to substantiate the value of the Property and has failed to demonstrate that Churchill holds an equity cushion sufficient to protect its interest, including in Churchill's objections to the Debtor's use of cash collateral and in Churchill's pending motion to dismiss this case [Doc 61]. The Debtor has relied on a 2024 appraisal, its principal's own valuation opinion, and an "updated appraisal expected shortly" that, upon information and belief, has not been produced.

12. Since the Petition Date, Churchill obtained its own appraisal which confirms that there is an insufficient equity cushion in the Property and that Churchill is not adequately protected. According to that appraisal, the as-is market value of the Property is $3,400,000 and assumes $1,900,000 in renovation costs to

reach this value. The net realizable value which takes into account the costs of a sale is $2,730,000. (See Exhibit A to Doc 85).

13. In the Plan the Debtor concedes that there is no meaningful equity cushion. The Debtor's liquidation analysis reflects a purported fair market value for the Property of $4,600,000.00 but a forced-sale value of only $2,300,000.00, against secured claims of approximately $3,010,563.03. On the Debtor's own forced-sale figures, the Property would not satisfy Churchill's secured claim, and the resulting equity is negative. Even accepting the Debtor's fair market value without discount, and after deducting estimated costs of sale and the claims of Zlur Funding, the resulting equity cushion, if any, is thin, contested, and insufficient to protect Churchill against continuing interest accrual, unpaid property taxes, costs of liquidation and further deterioration or diminution of the Property during the pendency of this case.

***The DIP Financing Motion and the Debtor's Plan***

14. On or about August 2026, the Debtor filed a motion seeking authority to obtain postpetition financing from 364 Capital, LLC (the "DIP Lender") [Doc 64] (the "DIP Motion"). Churchill has opposed the DIP Motion, including on the ground that the Debtor has not demonstrated sufficient equity in the Property to support the priming lien and superpriority claims the Debtor proposes to grant the DIP Lender.

As of the date of this Motion, the DIP Motion remains pending and has not been approved by the Court.

15. On September 23, 2026, the Debtor filed its Combined Disclosure Statement and Plan of Reorganization (the "Plan"). Under the Plan, Churchill's claim (Class 2) is to be paid through a two-step process: first, the Debtor proposes to complete renovation of the Property using DIP financing from the DIP Lender under the DIP Motion, making interim monthly payments to Churchill of $10,000 in October and November 2026, $15,000 in December 2026 and January 2027, and $20,000 per month thereafter; second, upon completion of renovations, the Debtor proposes to obtain new refinancing sufficient to pay Churchill and the DIP Lender in full. The Plan states that the Debtor's deadline to obtain that refinancing "shall be determined by, and subject to, the final order of this Court approving" the DIP Motion.

16. The Plan funds distributions to general unsecured creditors and to Zlur Funding only "following the refinancing of Clio Gardens," and the Plan's only stated source of funding is "the existing rent payments of tenants, and the future payments, following financing and completion of the remaining renovations as described in [the DIP Motion]." The Plan's projections, attached as Exhibit D, are expressly premised on "the approval of the [DIP] financing motion and the ability to obtain full occupancy at Clio Gardens." The Plan does not identify any committed source

of exit refinancing, any term sheet, or any lender willing to provide it; it identifies only the Debtor's intent to "obtain new financing" after renovations are complete.

17. Churchill's motion to dismiss this case pursuant to 11 U.S.C. § 1112(b) also remains pending before this Court.

## ARGUMENT

### A. THE DEBTOR HAS NOT SATISFIED SECTION 362(d)(3)(A) BECAUSE THE PLAN DOES NOT HAVE A REASONABLE POSSIBILITY OF BEING CONFIRMED WITHIN A REASONABLE TIME.

18. Section 362(d)(3) provides that the court shall grant relief from the stay to a creditor with a claim secured by an interest in the single asset real estate, on request, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court determines for cause), the debtor has either (A) "filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time," or (B) commenced monthly payments to the secured creditor "equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." 11 U.S.C. § 362(d)(3).

19. The 90-day period prescribed by section 362(d)(3) expired on September 24, 2026, ninety days after the June 26, 2026 Petition Date. The Debtor filed its Plan the day before that deadline, but the mere filing of a plan does not satisfy section 362(d)(3)(A), which requires that the plan have "a reasonable

possibility of being confirmed within a reasonable time." A debtor's plan "does not have to be perfect" to meet this standard, but it must "'delineate a credible path to reorganization.'" *In re Bordeaux Ventures, LLC*, No. 3:25-bk-02702, 2025 Bankr. LEXIS 2676, at *12-13 (Bankr. M.D. Tenn. Oct. 17, 2025).

20. Under section 362(d)(3)(A), any "[h]urdles to plan confirmation must be addressed in a way that provides the court with grounds to conclude (i) it is more likely than not they will be overcome, and (ii), because there is a time element, they can be overcome promptly." *Id.* (quoting *In re River Glen Land P'ship*, 2015 Bankr. LEXIS 442, 2015 WL 588696, at *1-2). Unless the plan has a true prospect of being confirmed within a reasonable time, or timely payments have been made, a secured creditor should not be compelled to endure further delay, expense, and risk. *Id.*

21. The Plan fails this test. It does not lay out a credible path to reorganization; instead, it shifts the entire risk of reorganizing onto Churchill and leaves Churchill exposed to delay and cost if the Plan fails.

22. To pay Churchill, the Plan requires three speculative things to happen: First, the Court must approve the still-contested DIP Motion, but the Debtor has met the burden of proof necessary to obtain the relief sought in the DIP Motion, *inter alia*, to prime Churchill's lien. Second, the Debtor must finish renovations it already failed to complete on schedule before the Petition Date, and for which the Debtor

does not have nor does the DIP Motion request sufficient funding to achieve.[2] Third, the Debtor must then find refinancing sufficient enough to pay Churchill, the DIP Lender, and other creditors in full, but the Plan identifies no such lender, no term sheet, and no timeline for that refinancing beyond the Debtor's stated intent to "obtain new financing." Because each of these steps depends on the one before it, and each is speculative or contested, the Plan gives the Court no basis to conclude that confirmation is more likely than not, let alone that it can happen promptly.

23. The Plan also does nothing to protect Churchill while these steps play out. The Debtor proposes interim payments of only $10,000 to $20,000 per month, but Churchill's claim is already accruing more than $12,000 per month in interest alone, before counting unpaid property taxes or the DIP Loan's own interest, which exceeds $17,000 per month at the proposed 12.5% rate. Additionally, none of the proposed payments reduce the principal Churchill is owed.

24. By the Debtor's own numbers, the Property generates only about $20,000 per month in net operating income before any debt service. Thus, the Debtor will not be able to fund the DIP Loan interest payments, proposed payments to

---

[2] Debtor seeks to borrow $1,655,000 but, according to Churchill's appraisal, renovation costs are estimated to require $1.9 million, $245,000 more than the $1,655,000 the Debtor proposes to borrow. Moreover, the Debtor's operating revenue is insufficient to close this funding gap.

Churchill and the $245,000 shortfall in expected construction costs let alone any contingency for over-budget construction costs.

25. In short, the Plan puts the entire risk of the Debtor's reorganization on Churchill.

26. And if any step in the Plan fails, whether the DIP Motion is denied or conditioned, the renovations again run over budget or behind schedule, or no refinancing ever materializes, Churchill will have already given up its priority position, kept absorbing interest and unpaid property taxes, and watched its collateral lose value, while the Debtor bears none of that downside.

27. If a debtor's "plan is patently unconfirmable, meaning there is not a delineated path to reorganization without" the secured creditor "bearing all the risks of the Debtor's desire to reorganize, stay relief should be granted. (see *In re Bordeaux Ventures, LLC*, No. 3:25-bk-02702, 2025 Bankr. LEXIS 2676, at *13 (Bankr. M.D. Tenn. Oct. 17, 2025).

## B. CHURCHILL IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY.

28. Because the 90-day period under section 362(d)(3) has expired, because the Debtor has not commenced the interest payments described in section 362(d)(3)(B), and because the Plan the Debtor filed does not have a reasonable possibility of being confirmed within a reasonable time under section 362(d)(3)(A), the Court "shall grant relief from the stay" as to the Property upon Churchill's

request. 11 U.S.C. § 362(d)(3). Relief from the stay will permit Churchill to resume the foreclosure and receivership proceedings already pending in the Genesee County Circuit Court prior to the Petition Date, restoring the parties to the position contemplated by applicable non-bankruptcy law and avoiding further erosion of Churchill's collateral while the Debtor pursues a plan that depends on contingencies it cannot show are reasonably likely to occur.

## CONCLUSION

WHEREFORE, Churchill MRA Funding I LLC respectfully requests that this Court enter an Order: (a) granting relief from the automatic stay under 11 U.S.C. § 362(a) with respect to the Property pursuant to 11 U.S.C. § 362(d)(3)(A); (b) waiving the 14-day stay of any order granting relief from the automatic stay under Federal Rule of Bankruptcy Procedure 4001(a)(3); and (c) granting Churchill such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

Dated: September 29, 2026

By: /s/ Kimberly Ross Clayson
Kimberly Ross Clayson (P69804)
Ethan Holtz (P71884)
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Telephone: (248) 351-3000
kclayson@taftlaw.com
eholtz@taftlaw.com

*Counsel to Creditor, Churchill MRA Funding I LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re: Case No. 26-31510-mar
Chapter 11

Discount Warehouses, LP,

Debtor. Hon. Mark A. Randon

_____________________________________

**ORDER GRANTING MOTION OF CHURCHILL MRA FUNDING I LLC FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(3)(A)**

THIS MATTER came before the Court on the Motion of Churchill MRA Funding I LLC for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(3)(A) (the "Motion"), filed by Churchill MRA Funding I LLC ("Churchill") in the above-captioned chapter 11 case of Discount Warehouses, LP (the "Debtor"); and the Court having reviewed the Motion, the Court finds as follows:

A. Notice of the Motion was served on the Debtor and the office of the United States Trustee and no objection was timely filed or served;

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G), the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

C. This is a single asset real estate case within the meaning of 11 U.S.C. § 101(51B);

D. The 90-day period prescribed by 11 U.S.C. § 362(d)(3) expired on September 24, 2026, without the Debtor having commenced monthly payments to Churchill under 11 U.S.C. § 362(d)(3)(B) or having filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time under 11 U.S.C. § 362(d)(3)(A);

NOW THEREFORE, IT IS HEREBY ORDERED as follows:

1 The Motion is GRANTED as set forth herein.

2 Pursuant to 11 U.S.C. § 362(d)(3)(A), the automatic stay imposed by 11 U.S.C. § 362(a) is hereby terminated and vacated with respect to the real property commonly known as Clio Gardens Apartments, located at 6914 Clio Court, Flint, Michigan 48504 (the "Property"), to permit Churchill to exercise its rights and remedies under applicable non-bankruptcy law with respect to the Property, including, without limitation, resuming and prosecuting to completion the foreclosure action and receivership proceeding pending in the Genesee County Circuit Court, State of Michigan, Case No. 26-62110-CB, and exercising any and all other rights and remedies available to Churchill under its loan documents and applicable law.

3 The 14-day stay of this Order otherwise imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3) is hereby waived, and this Order shall be effective and enforceable immediately upon entry.

4 This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-31510-mar<br>Chapter 11 |
| Discount Warehouses, LP, | |
| Debtor. | Hon. Mark A. Randon |

**NOTICE OF OPPORTUNITY FOR HEARING RE:**
**CHURCHILL MRA FUNDING I LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(3)(A)**

Churchill MRA Funding I LLC, ("Churchill"), has filed its *Motion for Relief From The Automatic Stay Pursuant to 11 U.S.C. § 362(d)(3)(A)* (the "Motion") with the United States Bankruptcy Court for the Eastern District of Michigan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief requested in the Motion, or if you want the court to consider your views on the Motion, within fourteen (14) days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

[1] Response or answer must comply with Fed. R. Civ. P. 8(b), (c) and (e).

You must also send a copy to:

Taft Stettinius & Hollister LLP
Attn: Kimberly Ross Clayson
27777 Franklin, Suite 2500
Southfield, MI 48034
(248) 351-3000
kclayson@taftlaw.com

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Respectfully submitted;

**TAFT STETTINIUS & HOLLISTER, LLP**

By: /s/ *Kimberly Ross Clayson*
Kimberly Ross Clayson (P69804)
27777 Franklin Road, Suite 2500
Southfield, Michigan 49034
(248) 351-3000
kclayson@taftlaw.com

Dated: September 29, 2026

*Attorneys for Creditor, Churchill MRA Funding I LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 26-31510-mar<br>Chapter 11 |
| Discount Warehouses, LP, | |
| Debtor. | Hon. Mark A. Randon |

______________________________________

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, I caused a true and correct copy of the *Motion of Churchill MRA Funding I LLC For Relief From The Automatic Stay Pursuant To 11 U.S.C. § 362(d)(3)(A)* (the "Motion"), *14-Day Notice Of Opportunity for Hearing Re: Motion of Churchill MRA Funding I LLC For Relief From The Automatic Stay Pursuant To 11 U.S.C. § 362(d)(3)(A)* (the "Notice"), and this *Certificate of Service* to be filed with the Clerk of the Court, which sends notices by operation of the Court's electronic case filing system ("ECF") to all participants registered to receive ECF notice in this case as set forth below:

Kelley Callard, on behalf of U.S. Trustee Andrew R. Vara
Kelley.Callard@usdoj.gov

Amy J. DeNise on behalf of Creditor Charter Distributing
adenise@sfglaw.net

Peter T. Mooney on behalf of Debtor In Possession Discount Warehouses, LP
pmooney@sfplaw.com, ssongalewski@sfplaw.com.

I further certify that I served the Notice via first class mail upon the parties listed in the court's mailing matrix in the above captioned matter as attached hereto as **Exhibit A**.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ *Kimberly Ross Clayson*
Kimberly Ross Clayson (P69804)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
kclayson@taftlaw.com

Dated: September 29, 2026 *Counsel to Creditor, Churchill MRA Funding I LLC*

# Exhibit A

Label Matrix for local noticing
0645-4
Case 26-31510-mar
Eastern District of Michigan
Flint
Tue Sep 29 11:17:54 EDT 2026

Ace Outdoor Services, LLC
c/o Blake Schmidt
2427 E. Judd Road
Burton 48529-2456

All American Fence
c/o Joshua Beaudry
Flint, MI 48506

Amy J. DeNise
Shedd-Frasier PLC
111 E. Court Street, Suite 2C3
flint, MI 48502-1603

Barry Cohen
7065 W. Ann Road, Suite # 130-683
Las Vegas, NV 89130-3865

Bitty Advance 2, LLC
c/o Jonathan Franco
1855 Griffin Road #A-474
Dania, FL 33004-2241

Kelley Callard (UST)
United States Trustee
211 West Fort Street
Suite 700
Detroit, MI 48226-3263

Charter Distributing
4100 W. Pierson Road
Flint, MI 48504-1348

Charter Distributing Company
c/o Amy J DeNise
Shedd-Frasier, PLC
111 E. Court St, Ste 2C3
Flint, MI 48502-1603

Charter Distributing Company dba Floor Sourc
Shedd Frasier PLC
111 E. Court Street, Suite 2C3
flint, MI 48502-1603

Churchill MRA Funding I LLC
c/o Ethan R. Holtz
Taft, Stettinius & Hollister LLP
Southfield, MI 48034

Kimberly Ross Clayson
Taft Stettinius & Hollister, LLP
27777 Franklin Rd. Suite 2500
Southfield, MI 48034-8222

Amy J. DeNise
Shedd-Frasier, PLC
111 E. Court Street
Suite 2-C-3
Flint, MI 48502-1603

Discount Warehouses, LP
7065 W. Ann Road, Suite # 130-683
Las Vegas, NV 89130-3865

(c)I FUND EXPERTS
C/O ALEX COHEN
500 W PUTNAM AVE STE 1C
GREENWICH CT 06830-2947

JG Contracting, LLC
c/o Jerry Gutierrez
PO Box 310034
Flint, MI 48531-0034

MAC Holdings, Inc. d/b/a Mid-America
c/o Phillip A. Elmore
Quattlebaum, Grooms & Tull PLLC
4100 Corporate Center Drive Suite 310
Springdale, AR 72762-5765

Michigan Lumber
c/o Kathleen Main
1038 S. Grand Traverse
Flint, MI 48502-1031

Peter T. Mooney
Simen, Figura & Parker
5206 Gateway Centre
#200
Flint, MI 48507-3917

Woodson & Bozeman, Inc.
c/o John W. Cowart
Memphis, TN 38118

Zlur Funding
25 SE 2nd Ave Ste 500 PMB 199
Miami, FL 33131-1607

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

I Fund Experts
c/o Alex Cohen
500 West Putnam Ave Ste 400
Greenwich, CT 06830

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Churchill MRA Funding I LLC

(d)Kimberly Ross Clayson
Taft Stettinius & Hollister LLP
27777 Franklin Road
Suite 2500
Southfield, MI 48034-8222

(u)Andrew R. Vara

End of Label Matrix

| | |
|---|---|
| Mailable recipients | 20 |
| Bypassed recipients | 3 |
| Total | 23 |