**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DISCOUNT WAREHOUSES, LP, | ) | Case No. 26-31510-mar |
| | ) | |
| Debtor. | ) | Hon. Mark A. Randon |
| ______________________________________ | / | |

# EXHIBIT

## SUMMARY OF PROPOSED CHANGES FROM THE PROPOSED DIP ORDER FILED WITH DEBTOR'S DIP FINANCING MOTION (ECF NO. 63, EXHIBIT 3) TO THE ATTACHED REDLINED REVISED PROPOSED FINAL DIP ORDER

364 Capital, LLC, the proposed DIP Lender, submits this summary for the Court's convenience. It lists each change between the proposed final order filed as Exhibit 3 to the Debtor's DIP Financing Motion (ECF No. 63) and the attached redlined revised proposed final order, paragraph by paragraph, to attempt to address formal and informal objections of the various parties. No party has signed off on the attached proposed Order but it reflects concessions and accommodations that 364 Capital and Debtor are willing to make because they believe that entry of a DIP Financing Order is in the best interests of the estate and all parties in interest.

Paragraph references are to the attached redlined revised order. Numbering of the existing paragraphs did not change; new paragraphs 8A through 8D were inserted after paragraph 8.

| **Location in attached Revised proposed Order** | **Filed proposed order (ECF No. 63, Ex. 3)** | **Redlined revised proposed order** |
|---|---|---|
| **Title** | Referred to superpriority claims under §§ 364(c)(1), 364(c)(2) and 364(d). | Refers separately to superpriority claims under § 364(c)(1) and to liens under §§ 364(c)(2), 364(c)(3) and 364(d). |
| **Preamble** | Did not define "Chapter 11 Case" or "Petition Date." | Defines "Chapter 11 Case" and "Petition Date" (June 26, 2026). |
| **Recital D** | Proceeds to pay costs of "construction and development of the Project" ("Project" not defined). | Proceeds to pay costs of "renovation of the Debtor's apartment complex located at 6914 Clio Court, Flint, Michigan," which is defined as the "Project." |

| Location in attached Revised proposed Order | Filed proposed order (ECF No. 63, Ex. 3) | Redlined revised proposed order |
|---|---|---|
| **Record recital** | Recited that the Court considered the Motion and its exhibits. | Identifies the record: the Motion (ECF No. 63), Churchill's objection (ECF No. 85), the Debtor's response with supplemental declaration and appraisal (ECF No. 89), the DIP Lender's concurrence (ECF No. 91), and the Debtor's declarations. |
| **¶ 1** | Advances authorized under the executed DIP Loan Documents. | Advances authorized under the executed DIP Loan Documents "and this Order." The $1,655,000 maximum is unchanged. |
| **¶ 3(e)** | Terms of the DIP Loan and DIP Loan Documents found fair and reasonable. | Same finding, as to the terms "as modified by this Order." |
| **¶ 4** | Contained a stray heading ("Authorization of the DIP Loan and DIP Loan Terms") mid-paragraph; authorized payment of fees in the DIP Commitment Letter. | Stray heading removed. Also authorizes payment of the Line Fee provided for in ¶ 8A. |
| **¶ 5** | DIP Loan approved on the terms of the DIP Commitment Letter; DIP Loan Documents to be consistent with the DIP Commitment Letter. | DIP Loan approved on the terms of the DIP Commitment Letter as supplemented by ¶¶ 8A–8D; DIP Loan Documents to be consistent with the DIP Commitment Letter and this Order. |
| **¶ 6** | Borrowing up to $1,655,000 in compliance with the DIP Loan Documents. | Same cap, and borrowing must also comply with ¶¶ 8A–8D. Line Fee installments count within the $1,655,000 maximum, not in addition to it. Lender Expense advances may exceed the maximum only as provided in ¶ 8C. |
| **¶ 8A (new)** | None. | Unused line fee of 45 basis points per month on the undrawn principal, beginning at Closing, payable monthly from the Interest Reserve. Each installment is deemed advanced and added to principal. Capitalized terms in ¶¶ 8A–8D take their meanings from the DIP Commitment Letter. |
| **¶ 8B(a) (new)** | None. | Initial Advance, net of Holdbacks, at Closing, once the conditions of the DIP Commitment Letter and DIP Loan Documents are satisfied, and only while an order authorizing the Debtor's use of cash collateral is in effect with no uncured default under it. |
| **¶ 8B(b) (new)** | None. | Conditions to each Advance: (i) compliance with the DIP Loan Documents; (ii) no default; (iii) no casualty over $250,000, condemnation, adverse zoning, or usage change; (iv) no new action against the Debtor or the property (other than Churchill's Genesee County Circuit Court case, No. 26-62110-CB) or governmental action materially affecting the project; (v) accurate draw statements; (vi) documentation |

| Location in attached Revised proposed Order | Filed proposed order (ECF No. 63, Ex. 3) | Revised proposed order |
|---|---|---|
| | | reasonably acceptable to the DIP Lender; (vii) approval by an inspector or architect designated by the DIP Lender, and DIP Lender approval of any amount outside the Approved Budget; (viii) line-item limits, with overruns allowed only if offset by savings on another line or by contingency; (ix) sworn statements and lien waivers under MCL 570.1110 and 570.1115; (x) title continuation or endorsement; (xi) certified copies of checks; and (xii) a draw request identifying the budget line, certifying the amount is within that line, and certifying completion of the work funded by the prior Advance. Condition (xiii) requires that an order authorizing the Debtor's use of cash collateral be in effect, with no uncured default under it, before each Advance. |
| **¶ 8B(c) (new)** | None. | Renovation costs disbursed in three equal Advances: one-third at Closing, one-third after the first is used and documented, and the final third after the second is used and documented. |
| **¶ 8B(d) (new)** | None. | Renovation to be completed within six months after the initial Advance is funded, subject to delays beyond the Debtor's reasonable control (including weather, material delivery problems, contractor availability, and inspection and funding processing delays). The Debtor must also meet the Milestones on the Milestone Schedule; the DIP Lender may extend a Milestone Deadline with notice to Churchill; and the Debtor must give notice within three business days if it will miss a Milestone. |
| **¶ 8B(e) (new)** | None. | Copies of each draw request and the inspector's approvals go to Churchill's counsel, and the inspector reports to the Debtor, the DIP Lender, and Churchill at least monthly and with each draw. Churchill receives no right to approve, condition, or delay an Advance. |
| **¶ 8C (new)** | None. | The DIP Lender may advance Lender Expenses, which are added to principal and may exceed the Maximum Loan Amount. Lender Expenses include the DIP Lender's reasonable costs and its counsel's fees at standard hourly rates not to exceed $350 per hour. |
| **¶ 8D (new)** | None. | The DIP Loan is to be without cost to the DIP Lender. |

| Location in attached Revised proposed Order | Filed proposed order (ECF No. 63, Ex. 3) | Revised proposed order |
|---|---|---|
| **¶ 9** | Superpriority over all administrative and other claims of every kind, listing §§ 105, 326, 328, 330, 331, 364(c), 365, 503, 506(c), 507, 546, 726, 1113 and 1114, including the proceeds of avoidance actions. | Superpriority over administrative expenses under §§ 503(b) and 507(b), subject to the Carve-Out. Excludes chapter 5 claims and their proceeds, and does not alter the priority of § 507(a)(8) tax claims. |
| **¶ 10(a)** | First-priority lien under § 364(c)(2) on unencumbered property, described by reference to "the commitment letter" and "the Borrower." | Same lien. Defines "Real Property" and "DIP Collateral," adds rents and proceeds to the collateral description, conforms references to the Debtor and the DIP Commitment Letter, and excludes chapter 5 claims and their proceeds from the DIP Collateral. |
| **¶ 10(b)** | Priming lien under § 364(d) on property subject to the Prepetition Liens. | Same priming lien. Adds that nothing in the order primes or alters the priority of any valid tax lien, except by separate order after notice and a hearing that satisfies § 364(d). |
| **¶ 10(c) (new)** | None. | Granting junior lien under § 364(c)(3) on DIP Collateral subject to valid liens other than the Prepetition Liens (including tax liens), junior only to those liens. |
| **¶ 10(d) (new)** | None. | Insurance proceeds are deposited in the Debtor's DIP operating account; all liens attach to them with the same validity and relative priority as before the loss; use is limited to the Order, the DIP Loan Documents, and the Approved Budget. |
| **¶ 11** | DIP Lender not required to marshal and may foreclose on collateral in any order in its sole discretion. | Entry of the order does not decide whether the DIP Lender could be required to marshal. |
| **¶ 12** | Filings evidencing the DIP Liens deemed made as of the Petition Date. | Deemed made as of the date the order is entered. |
| **¶ 14** | Churchill and Zlur found adequately protected based on the "Debtor's Appraisal" (undefined); no adequate protection of any kind. | Same finding, with the appraisal identified (ECF No. 89) and "Prepetition Liens" and "Prepetition Collateral" defined. Adequate protection is limited to what this order or any cash collateral order provides. Each Prepetition Lender receives a replacement lien to the extent of any postpetition diminution in value, with its existing relative priority, junior to the DIP Liens, DIP Superpriority Claims, Permitted Liens, and Carve-Out, and not enforceable until the DIP Obligations are paid in full. |
| **¶ 15** | Repeated the ¶ 3(e) fairness and good-faith findings; no operative § 364(e) language. | Cross-refers to the ¶ 3(e) findings in place of repeating them, and adds that reversal or modification on appeal does not affect DIP Obligations incurred, or DIP Liens or DIP |

| Location in attached Revised proposed Order | Filed proposed order (ECF No. 63, Ex. 3) | Revised proposed order |
|---|---|---|
| | | Superpriority Claims granted, before the reversal or modification unless the order was stayed pending appeal. |
| **¶ 18** | Carve-Out included U.S. Trustee fees and Clerk's fees, and allowed professional fees up to the amounts in "the Budget," plus $10,000 after a default notice. | U.S. Trustee quarterly fees are taken out of the Carve-Out and must be paid in full in the ordinary course, free of any cap. Debtor's Professional fees are limited to the Approved Budget plus $10,000 after a default notice, as before. |
| **¶ 19** | Waived § 506(c) surcharge, the § 552(b) "equities of the case" exception, and marshaling. | All three waivers deleted. The order states that nothing in it waives the estate's § 506(c) rights or prejudices the DIP Lender's defenses. |
| **¶ 20** | DIP Lender's fees and expenses payable as provided in the DIP Loan Documents. | Payable as provided in the DIP Loan Documents and ¶ 8C. |
| **¶ 21** | Referred to "customary events of default" in the DIP Loan Documents. | Lists the Events of Default: (a) default under the DIP Commitment Letter or, once filed, any other DIP Loan Document; (b) conversion or dismissal; (c) appointment of a trustee or an examiner with expanded powers; (d) stay relief to another lienholder to foreclose on the Real Property; (e) an order modifying this order without the DIP Lender's consent; (f) failure to complete the renovation on time or to meet a Milestone; (g) unauthorized use of proceeds; (h) failure to comply with any other material term; and (i) the Debtor's inability to use cash collateral. The remedies procedure (ten days' notice; emergency hearing limited to whether a default exists) is unchanged. The DIP Lender may waive any Event of Default in writing, with notice to the Debtor, the U.S. Trustee, Churchill, and Zlur. |
| **¶ 22** | DIP Liens, DIP Obligations, and superpriority claims survive conversion, dismissal, and confirmation. | Same, using the defined term "DIP Superpriority Claims." Adds that the Prepetition Liens also survive conversion or dismissal with the priority set by this order, and that nothing in the paragraph limits plan treatment of a Prepetition Lender's claim. |
| **Milestone Schedule (new)** | None. | Five renovation milestones (permits and site work; exterior; interior rough-in; interior finish, kitchens, and baths; final completion), due 30, 75, 120, and 150 days after the initial Advance is funded for the first four, with final completion due on the completion date required by ¶ 8B(d). |
| **Clerical** | — | Caption name ("Discount Warehouses, LP"); "that certain" and "LLC" in Recital A; removal of a |

| Location in attached Revised proposed Order | Filed proposed order (ECF No. 63, Ex. 3) | Redlined revised proposed order |
| --- | --- | --- |
| | | duplicate "DIP Loan" definition in Recital B; spacing and grammar in the record recital; "arm's length" (¶¶ 3(e), 15); punctuation and "the DIP Loan Documents" in ¶ 8; "recordation, or filing" and "DIP Collateral" in ¶ 10; "Marshaling" spelling (¶ 11); "Approved Budget" (¶ 18). |

Respectfully submitted,

Dated: October 18, 2026

/s/ Robert N. Bassel
Robert N. Bassel (P48420)
Counsel for 364 Capital, LLC
PO Box T
Clinton, MI 49236
248.677.1234
bbassel@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Proceeding |
| | ) | |
| Discount Warehouses, LP, | ) | Case No. 26-31510 |
| | ) | |
| Debtor. | ) | Hon. Mark A. Randon |
| | ) | |

_____________________________________________/

**FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (II) GRANTING SUPERPRIORITY CLAIMS PURSUANT TO ~~SECTIONS~~SECTION 364(c)(1) AND LIENS PURSUANT TO SECTIONS 364(c)(2), 364(c)(~~2~~3) AND 364(d) OF THE BANKRUPTCY CODE, AND (III) GRANTING RELATED RELIEF**

This matter coming before the Court on the motion (the "Motion") filed by the above-captioned debtor and debtor in possession (the "Debtor"), which commenced this chapter 11 case (the "Chapter 11 Case") on June 26, 2026 (the "Petition Date"), seeking, pursuant to sections 105, 361, 362, 363, 364, 507 and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-2 of the Local Bankruptcy Rules for the Eastern District of Michigan (the "Local Rules"), the entry of an order providing, among other things:

A. Authorizing the Debtor to obtain senior secured post-petition super priority financing (the "DIP Loan") pursuant to the terms and conditions of ~~the~~that certain Financing Commitment for a Chapter 11 Debtor-in-Possession Loan in the Maximum Loan Amount of One Million Six Hundred Fifty-Five Thousand Dollars ($1,655,000), by and between the Debtor and 364 Capital, LLC~~.~~ (including any assignee or designee, the "DIP Lender"), attached to the Motion as Exhibit 1 (the "DIP Commitment Letter"), and all agreements, documents, instruments and certificates executed, delivered, filed

or entered into in connection with the DIP Loan and DIP Commitment Letter (as amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, collectively, the "DIP Loan Documents"),

B. Providing for the borrowing of loans in accordance with the Approved Budget (attached as Exhibit A to the DIP Commitment Letter) in an aggregate maximum principal amount not to exceed $1,655,000.00 (the "DIP Loan"),

C. Authorizing the Debtor to execute, enter into and deliver to the DIP Lender all documentation for the DIP Loan and any associated security documents in form and substance satisfactory to the DIP Lender and to perform such other and further acts as may be required in furtherance of the DIP Loan and the DIP Loan Documents,

D. Authorizing the Debtor to use the proceeds of the DIP Loan to pay for the remaining costs related to the construction and developmentrenovation of the Debtor's apartment complex located at 6914 Clio Court, Flint, Michigan (the "Project"), the costs of administration of the Chapter 11 Case and such other costs as expressly agreed to by the DIP Lender, in accordance with the DIP Loan Documents and the Approved Budget;

E. Deeming the Prepetition Lenders (as defined herein) adequately protected on account of the Prepetition Liens (as defined herein) being primed;

F. Granting allowed superpriority administrative expense claim status in the Chapter 11 Case for all obligations of the Debtor to the DIP Lender arising under the DIP Loan (collectively, the "DIP Obligations");

G. Granting the DIP Lender automatically perfected first-priority security interests in and liens on all of the DIP Collateral (as defined herein) to secure all of the DIP Obligations,

which liens and security interests shall be subject only to Permitted Liens (as defined below) and the Carve-Out (as defined below);

H. Modifying the automatic stay imposed by Section 362 of the Bankruptcy Code solely to the extent necessary to provide the DIP Lender with the relief necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Order;

and the Court having considered the Motion (ECF No. 63), the exhibits attached to the Motion, the objection of Churchill MRA Funding I, LLC (ECF No. 85), the Debtor's response to that objection, with the supplemental declaration and appraisal attached to it (ECF No. 89), the DIP Lender's concurrence (ECF No. 91), and the Debtor's declarations ; and due and appropriate notice of the Motion, and the relief requested therein and having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and the relief requested being fair and reasonable and in the best interests of the Debtor, its estate, its creditors, and essential for the Debtor's reorganization efforts and the continued operation of the Debtor's business through the period covered by the current Approved Budget (or any subsequent Approved Budget); and it further appearing that the Debtor is unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code or to obtain credit secured solely by the Debtor's unencumbered assets or by junior liens on previously-encumbered assets; and upon the record before the Court with respect to the Motion; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED, that:**

1. Financing Approved. The Motion is granted in accordance with the terms of this Order. The Debtor is authorized to obtain advances in an aggregate amount not to exceed $1,655,000 from the DIP Lender pursuant to the terms and conditions set forth in the executed DIP Loan Documents and this Order. All objections to the Motion, to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby overruled.

2. Jurisdiction. This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Findings Regarding the DIP Loan.

(a) Cause. Good cause has been shown for entry of this Order.

(b) Need for DIP Loan. Without the financing proposed by the Motion, the Debtor does not have the funds necessary to continue the renovation of the Project through the period set forth in the current Approved Budget (or any subsequent Approved Budget as contemplated by the terms of this Order). The Debtor's ability to complete construction of the Project and pay the costs of administration of its estate depends on obtaining access to the DIP Loan. The access of the Debtor to sufficient construction financing through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital for preserving and maximizing the value of the Debtor's estate for the benefit of its creditors. Failure to obtain the relief requested in the Motion will harm the Debtor, its estate, and creditors.

(c) No Credit Available on More Favorable Terms. The Debtor is unable to obtain financing on terms more favorable than those offered by the DIP Lender under the DIP Loan. The Debtor is unable to obtain unsecured credit allowable under Section

503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit under Sections 364(c) or 364(d) of the Bankruptcy Code on equal or more favorable terms than those offered by the DIP Lender under the DIP Loan. The Debtor has made an adequate showing of its efforts to obtain financing on more favorable terms for the purposes of the relief granted herein. A credit facility in the amount and on the terms provided by the DIP Loan is not available from the DIP Lender without the Debtor granting to the DIP Lender (i) the DIP Liens (as defined herein) and the DIP Superpriority Claims (as defined herein), and (ii) the other protections set forth in this Order.

(d) Use of Proceeds of the DIP Loan. As a condition to the extension of credit under the DIP Loan, the DIP Lender and the Debtor have agreed that proceeds under the DIP Loan shall be used exclusively in a manner consistent with the terms of the DIP Loan and the Approved Budget.

(e) Business Judgment and Good Faith Pursuant to Section 364(e). The terms and conditions of the DIP Loan and the DIP Loan Documents, as modified by this Order, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the exercise of prudent business judgment by the Debtor consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Loan was negotiated without collusion, in good faith and at ~~arms'~~ arm's length between the Debtor and the DIP Lender. Use of credit to be extended under the DIP Loan shall be deemed to have been so allowed, advanced, made, used or extended in good faith, within the meaning of Section 364(e) of the Bankruptcy Code and in express reliance on the protections offered by Section 364(e) of the Bankruptcy Code, and the DIP

Lender is therefore entitled to the full protections and benefits of Section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

4. Relief. Absent the relief provided by this Order, the Debtor, its estate, and its creditors will be harmed. Consummation of the DIP Loan in accordance with the DIP Loan Documents is therefore in the best interests of the Debtor and its estate and is consistent with its fiduciary duties. ~~Authorization of the DIP Loan and DIP Loan Terms.~~ The Debtor is expressly and immediately authorized to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Order and the DIP Loan Documents. The Debtor further is authorized to pay to the DIP Lender all fees set forth in the DIP Commitment Letter and the Line Fee provided for in paragraph 8A of this Order. The DIP Obligations shall represent valid and binding obligations of the Debtor, enforceable against the Debtor and its estate in accordance with their terms. Notwithstanding (a) any other provision of this Order which may appear to the contrary or (b) any provision of the DIP Loan Documents, to the extent of any conflict between any of the DIP Loan Documents and any provision of this Order, this Order shall control and govern.

5. Authorization to Perform Under DIP Loan Documents. Subject to the terms of this Order, the Debtor is hereby authorized to execute, enter into, and deliver the DIP Loan Documents and all instruments and documents which may be required or reasonably necessary for the performance by the Debtor under the DIP Loan and the creation and perfection of the DIP Liens as described in and provided for by this Order and the DIP Loan Documents. This Order and the DIP Loan Documents shall evidence the validity and binding effect of the DIP Obligations and shall govern the financial accommodations to be provided to the Debtor by the DIP Lender. This Order approves the DIP Loan based upon the terms of the DIP Commitment Letter, as

supplemented by paragraphs 8A through 8D of this Order. The Debtor and the DIP Lender intend to enter into the DIP Loan Documents prior to any extension of credit under the DIP Loan and will file copies of the DIP Loan Documents with this Court. The DIP Loan Documents shall be consistent, in all material respects, with the DIP Commitment Letter and this Order and upon the filing of such signed DIP Loan Documents with the Court, such DIP Loan Documents shall be deemed approved by this Order.

6. Authorization to Borrow. Subject to the terms, conditions, limitations on availability set forth in the DIP Loan Documents and this Order, the Debtor is hereby authorized to borrow up to $1,655,000.00 from the DIP Lender in compliance with the DIP Loan Documents. and paragraphs 8A through 8D of this Order. Each installment of the Line Fee under paragraph 8A is an advance counted within, and not in addition to, that $1,655,000.00 maximum. Advances for Lender Expenses under paragraph 8C may exceed that maximum only as provided in paragraph 8C.

7. No Obligation to Extend Credit. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Documents or this Order, unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Order have been satisfied in full or have been waived by the DIP Lender in its sole and absolute discretion.

8. Use of DIP Loan Proceeds;. From and after the Petition Date, the Debtor shall use the DIP Loan only for the purposes and line items specifically set forth in this Order and the other DIP Loan Documents, and in compliance with the Approved Budget.

8A. Unused Line Fee. Upon entry of this Order, the DIP Lender shall be entitled to a monthly unused line fee (the "Line Fee") calculated at forty-five (45) basis points (0.45%) per month of the principal amount of the DIP Loan that has not been advanced, commencing at the

closing of the DIP Loan (the "Closing"). The Line Fee shall be payable monthly from the Interest Reserve, together with each monthly interest payment, and calculated as set forth in this paragraph. As each monthly installment of the Line Fee is due, and when each Advance of the DIP Loan is made, the DIP Lender shall be deemed to have funded such amount to the Debtor, and the Debtor shall be deemed to have paid such amount to the DIP Lender. With each such payment and funding of the Line Fee, the principal balance of the DIP Loan shall be increased by such amount. Capitalized terms used in paragraphs 8A through 8D and not otherwise defined in this Order (including "Interest Reserve," "Holdbacks," "Title Company," and "Improvements") have the meanings given to them in the DIP Commitment Letter.

8B. Loan Advances.

(a) Initial Advance. Upon entry of this Order, and upon the satisfaction, in the DIP Lender's sole and absolute discretion, of all requirements and conditions of the DIP Commitment Letter and the DIP Loan Documents, and provided that an order of this Court authorizing the Debtor's use of cash collateral is in effect and no default under that order has occurred and remains uncured, the DIP Lender shall advance the initial Advance, net of the Holdbacks, to the Debtor and/or the Title Company at Closing.

(b) Conditions to Advances. The DIP Loan will be made through a series of disbursements (each, an "Advance") pursuant and subject to the following, each of which must be satisfied, in the DIP Lender's sole and absolute discretion, as a condition precedent to the DIP Lender's obligation to disburse any Advance:

(i) the Debtor is in full compliance with all of the covenants, agreements, obligations and undertakings required to be performed by the Debtor under the

DIP Commitment Letter and the other DIP Loan Documents, unless compliance has been waived in writing by the DIP Lender;

(ii) no event of default, as defined in the DIP Commitment Letter or in any other DIP Loan Document, and no event or condition which with notice or the passage of time or both would constitute such an event of default, has occurred and has not been cured to the DIP Lender's satisfaction;

(iii) the real property and the improvements thereon have not suffered any (A) significant damage by fire or other casualty in excess of Two Hundred Fifty Thousand Dollars ($250,000), or (B) condemnation, adverse zoning, or usage change;

(iv) other than the prepetition action against Debtor by Churchill in Genesee County Circuit Court No. 26-62110-CB), no action against the Debtor, the real property, or the Improvements has been commenced or threatened, and no law, regulation, ordinance, moratorium, or injunctive proceeding has been commenced or threatened by any governmental authority, if the result of such law, regulation, ordinance, moratorium, injunctive proceeding, restriction or like matter would have the effect, in the DIP Lender's judgment, of materially and adversely affecting the expected benefits to be gained by the Debtor in connection with the DIP Collateral or by the DIP Lender in connection with its assisting the Debtor in financing the transaction described in the DIP Commitment Letter for any reason, whether because the Debtor is prohibited or delayed in completing the Improvements or otherwise;

(v) all statements contained in the Debtor's application for the Advance are true and complete in all material respects, all other certificates, statements and data furnished to the DIP Lender by or on behalf of the Debtor in connection with the transactions contemplated by the DIP Commitment Letter and the other DIP Loan Documents are true and complete in all material respects, and there are no facts or events known to the Debtor which, if disclosed to the DIP Lender, would make such statements, certificates or data untrue in any material respect;

(vi) all documentation is, at all times, in form and content reasonably acceptable to the DIP Lender;

(vii) the DIP Lender has received approval of the application for the Advance by a third-party inspector and/or the architect designated by the DIP Lender (the "Inspecting Party"), together with any other certifications the DIP Lender may require from the Inspecting Party, and if any part of an Advance is not included in the Approved Budget, the DIP Lender has approved it;

(viii) no Advance is made for a line item that exceeds the amount for that line item in the Approved Budget; provided, however, that the actual expenses for a line item may exceed the Approved Budget line item so long as another line item came in under budget by at least the amount of the overage, or there remains a contingency amount in the Approved Budget sufficient to cover the excess, or both, as determined in the DIP Lender's reasonable discretion;

(ix) the Debtor has procured and delivered to the DIP Lender sworn statements under MCL 570.1110 and waivers of lien under MCL 570.1115, and invoices or paid receipts if requesting reimbursement, from all parties who have

furnished materials or services or performed labor of any kind in connection with the construction of any post-petition Improvements;

(x) the DIP Lender has received evidence of title continuation, or an endorsement to the title insurance policy previously delivered, showing that since the last preceding Advance, or the date of issuance of the title insurance policy, as the case may be, there has been no material adverse change in the state of title and no exceptions not previously approved by the DIP Lender, which endorsement shall increase the coverage of the policy by an amount equal to the Advance then being made if the policy does not by its terms provide for such an increase; ~~and~~

(xi) the DIP Lender has received copies, certified by the Inspecting Party to be true and correct, of all checks issued by the Debtor since the immediately preceding Advance in connection with the DIP Collateral, the construction of any improvements, or any other use of proceeds of the DIP Loan, and all other evidence of payment requested by the DIP Lender~~.~~; ~~and~~

(xii) the application for the Advance identifies the Approved Budget line item or items to which it relates, certifies that the amount requested does not exceed the amount remaining for each such line item (subject to subparagraph (viii)), and certifies that the work paid for with the preceding Advance has been substantially completed in accordance with the Approved Budget and the plans and specifications for the Project~~.~~; and

(xiii) an order of this Court authorizing the Debtor's use of cash collateral is in effect, and no default under that order has occurred and remains uncured.

(c) Renovation Draws. The portion of the DIP Loan allocated in the Approved Budget to the hard and soft costs to complete the renovation of the Project (the "Renovation Portion") shall be disbursed in three equal Advances: (i) one-third at Closing, as part of the initial Advance under subparagraph (a); (ii) one-third after the first renovation Advance has been used and documented; and (iii) the final one-third after the second renovation Advance has been used and documented. The second and third renovation Advances are subject to the conditions in subparagraph (b), and use and documentation of a prior renovation Advance shall be shown through the deliveries required by subparagraphs (b)(vii), (ix), and (xi).

(d) Completion. The Debtor shall complete the renovation of the Project within six (6) months after the date the initial Advance is funded, subject to delays beyond the Debtor's reasonable control (including weather, material delivery problems, contractor availability, and inspection and funding processing delays). The Debtor shall achieve each of the renovation milestones (the "Milestones") by the corresponding deadline (each, a "Milestone Deadline") set forth on the Milestone Schedule attached to this Order. The Milestones and Milestone Deadlines shall be consistent with the line items and timing of the Approved Budget and with the six-month completion period in this subparagraph. The DIP Lender may extend any Milestone Deadline in writing, with notice to counsel for Churchill. The Debtor shall give written notice to the DIP Lender and to counsel for Churchill promptly, and in any event within three (3) business days, after the Debtor becomes aware that it will not, or did not, achieve any Milestone by its Milestone Deadline.

(e) Information to Churchill. When the Debtor submits an application for an Advance to the DIP Lender, it shall deliver a copy of the application at the same time to counsel for Churchill, together with the Inspecting Party's approval and any certifications delivered under subparagraph (b)(vii). The Inspecting Party shall deliver a written inspection report to the Debtor, the DIP Lender, and counsel for Churchill at least monthly and in connection with each application for an Advance. Delivery of these materials to Churchill does not give Churchill any right to approve, condition, or delay any Advance.

8C. Lender Expenses.

(a) Subject to the economic and non-economic terms of the DIP Commitment Letter, the DIP Lender, in its sole and absolute discretion, may make Advances on the DIP Loan to pay Lender Expenses incurred in connection with the DIP Loan. Lender Expenses so advanced shall automatically become part of the principal amount of the DIP Loan as of the date of each such Advance, and such Advances may collectively result in a sum in excess of the Maximum Loan Amount.

(b) "Lender Expenses" include, without limitation:

(i) all of the DIP Lender's reasonable costs and out-of-pocket expenses (including, without limitation, travel and lodging expenses) related to, and in connection with, the DIP Loan or the Chapter 11 Case;

(ii) the reasonable fees of the DIP Lender's counsel, calculated on a time-spent basis at the standard hourly rates that firm generally charges clients for similar matters, not to exceed $350.00 per hour, and the out-of-pocket expenses of the

DIP Lender's counsel related to, and in connection with, the DIP Loan or the Chapter 11 Case;

(iii) out-of-pocket expenses for the administration of the DIP Loan and monitoring of the DIP Collateral; and

(iv) travel expenses required to facilitate and service the transactions described in the DIP Commitment Letter and the other DIP Loan Documents, to monitor the Chapter 11 Case and the DIP Collateral, and to protect any of the DIP Lender's rights under the DIP Commitment Letter, the other DIP Loan Documents, and this Order.

8D. No Cost to Lender. The DIP Loan shall be without cost to the DIP Lender.

9. Superpriority Claims. Pursuant to Section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor (the "DIP Superpriority Claims") with priority over ~~any and all administrative expense claims, adequate protection claims, diminution claims, and all other claims against the Debtor or its estate in the Chapter 11 Case, at any time existing or arising, of any kind or nature whatsoever, including without limitation, ~~administrative expenses~~, such as the proceeds of avoidance actions and~~ of the kinds specified in ~~or ordered pursuant to Bankruptcy Code ~~Sections~~ 105, 326, 328, 330, 331, 364(c), 365, 503(a),~~ 503(b)~~, 506(c), 507(a),~~ and 507(b)~~, 546(c), 546(d), 726, 1113 and 1114, and~~ of the Bankruptcy Code, subject to the Carve-Out. Notwithstanding the foregoing, the DIP Superpriority Claims shall not extend to, be satisfied from, or otherwise confer upon the DIP Lender any ~~other provision~~interest in any claims or causes of action arising under Chapter 5 of the Bankruptcy Code ~~as provided~~or the proceeds thereof, and nothing in this Order shall alter the priority of any allowed priority tax claim under Section ~~364(c)(1~~507(a)(8) of the Bankruptcy Code~~;~~

~~and which claims shall at all times be senior to the rights of the Debtor and its estate, any successor trustee or other estate representative and any creditor or other party in interest to the extent permitted by law~~.

10. DIP Liens. As security for the DIP Obligations, effective and perfected upon the date of entry of this Order and without the necessity of the execution, recordation~~ of filings~~, or filing by the Debtor of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender or its agents over any DIP Collateral, the following security interests and liens are hereby granted to the DIP Lender (the "DIP Liens"), subject only to any Permitted Liens and the Carve-Out:

(a) pursuant to Section 364(c)(2) of the Bankruptcy Code, to the extent that ~~such~~any DIP Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date, a perfected first-priority security interest in and lien on all currently-owned or hereafter acquired assets and property, including without limitation all of its real and personal property and assets, whether tangible or intangible, and whether now owned or hereafter acquired, or in which it now has or at any time in the future may acquire any right, title, or interest, including, without limitation: certain real property located at 6914 Clio Court, Flint, Michigan (the "Real Property"), together with all buildings, structures, and other improvements now or hereafter located on the land as well as all furniture, fixtures, and equipment, as well as all permits and licenses, accounts receivable, leasehold rights, third-party contracts, plans and specifications for the Real Property, all rents and proceeds thereof, and any other asset of the ~~Borrower~~Debtor not in the form of real property and any and all assets described in the ~~commitment letter~~DIP Commitment Letter (collectively, the "DIP Collateral"); provided, however,

that notwithstanding anything to the contrary in this Order, the DIP Commitment Letter, or the DIP Loan Documents, the DIP Collateral shall not include any claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any proceeds thereof; and

(b) pursuant to Section 364(d) of the Bankruptcy Code, a perfected first-priority security interest in and lien on all DIP Collateral to the extent such DIP Collateral is subject to the Prepetition Liens, which Prepetition Liens shall be primed by the DIP Liens. The ~~primed~~ DIP Liens shall not be subject to being treated pari passu with or subordinated to any other liens or security interests (whether currently existing or hereafter created), subject only to permitted exceptions to be expressly agreed upon in writing by the DIP Lender in its discretion or imposed by applicable non-bankruptcy law (the "Permitted Liens"). For the avoidance of doubt, nothing in this Order shall prime, subordinate, or otherwise alter the priority of any valid tax lien, except pursuant to a separate order of the Court entered after notice and a hearing and satisfaction of the requirements of Section 364(d) of the Bankruptcy Code.

(c) pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien on all DIP Collateral , including DIP Collateral that is subject to valid, perfected, and non-avoidable liens in existence on the Petition Date other than the Prepetition Liens (including any tax lien described in subparagraph (b)), junior only to those liens.

(d) Insurance Proceeds. During the pendency of the Chapter 11 Case, any insurance proceeds payable as a result of any loss, casualty, or damage to the DIP Collateral shall be paid directly into the Debtor's debtor-in-possession operating account. The deposit

of any such proceeds shall not alter the validity, extent, or priority of any lien or security interest in such proceeds, and all such liens and security interests shall attach to the proceeds with the same validity, extent, and relative priority that existed immediately before the loss, casualty, or damage. The Debtor shall use such proceeds only in accordance with this Order, the DIP Loan Documents, the Approved Budget, and applicable law, or pursuant to further order of the Court.

~~11. Marshalling. The DIP Lender shall not be required to marshal the Collateral, and shall be authorized to foreclose on and liquidate any of the Collateral as consistent with the DIP Loan Documents, in any manner or order in the DIP Lender's sole and absolute discretion.~~

11. Marshaling. Entry of this Order does not determine whether the DIP Lender could be required to marshal the DIP Collateral.

12. Perfection of DIP Liens. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all DIP Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any lockbox or deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, at its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens, and all such financing statements, mortgages, notices, other documents, and approvals shall be deemed to have been filed or recorded as of the ~~Petition Date~~date of entry of this Order; provided, however, that no such filing or recordation shall be

necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, notices and other documents as the DIP Lender reasonably requests. The DIP Lender in its discretion may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

13. Use of Prepetition Collateral. Subject to the terms and conditions of this Order, the Debtor is authorized, pursuant to Section 363 of the Bankruptcy Code, to use the Prepetition Collateral.

14. The Prepetition Lenders Are Adequately Protected. Based on the appraisal attached to ECF No. 89 (the "Debtor's Appraisal"), the Court finds that Churchill MRA Funding I, LLC ("Churchill") and Zlur Funding, LLC ("Zlur," and together with Churchill, the "Prepetition Lenders") are adequately protected, even after their liens on and security interests in the Debtor's property (the "Prepetition Liens," and the property subject to them, the "Prepetition Collateral") are primed by the DIP Liens, and, therefore, are not entitled to any form of adequate protection or adequate protection payments. other than as set forth in this Order or in any order of this Court authorizing the Debtor's use of cash collateral. To the extent of any diminution in the value of its interest in the Prepetition Collateral after the Petition Date, each Prepetition Lender is granted a replacement lien on the DIP Collateral, with the same relative priority as its Prepetition Lien (the "Replacement Liens"). The Replacement Liens are junior and subordinate to the DIP Liens, the DIP Superpriority Claims, the Permitted Liens, and the Carve-Out, are perfected without further action, and may not be enforced until the DIP Obligations have been paid in full.

15. Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order. The terms and conditions of the DIP Loan and the DIP Loan Documents are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the exercise of prudent business judgment by the Debtor consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. ~~The~~As found in paragraph 3(e) above, the DIP Loan was negotiated without collusion, in good faith and at ~~arms'~~arm's length between the Debtor and the DIP Lender. The DIP Lender has acted in good faith in connection with this Order, and its reliance on this Order is in good faith. Accordingly, under Section 364(e) of the Bankruptcy Code, any reversal or modification of this Order on appeal shall not affect the validity of any DIP Obligations incurred, or the validity or priority of any DIP Liens or DIP Superpriority Claims granted, before the effective date of that reversal or modification, unless this Order and the incurring of those DIP Obligations were stayed pending appeal.

16. Proofs of Claim. The DIP Lender will not be required to file a proof of claim in the Chapter 11 Case for any claim allowed herein in relation to the DIP Loan.

17. Modification of Automatic Stay. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified solely to the extent necessary to authorize the Debtor and DIP Lender to take any action necessary to implement and effectuate the terms and provisions of this Order and the DIP Loan Documents.

18. Carve-Out. "Carve-Out" means, collectively, (a) fees payable ~~to the United States Trustee pursuant to 28 U.S.C. § 1930 and~~ to the Clerk of the Court, and (b) allowed fees and expenses of professionals retained by the Debtor's estate that are incurred prior to delivery of a notice of an Event of Default (as defined below), in an aggregate amount not to exceed the amounts set forth in the Approved Budget, plus $10,000.00 for such fees and expenses incurred after

delivery of such notice. Notwithstanding anything to the contrary in this Order, all quarterly fees due and payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in full in the ordinary course as they become due and shall not be subject to the Carve-Out, the foregoing cap, or any other cap or separate allocation requirement.

19. Waiver of SectionsSection 506(c) and 552(b); Marshaling. Subject to entry of. Nothing in this Order, no costs constitutes a waiver of any rights of the Debtor or expenses of administration shall be charged against the DIP Lender or the DIP Collateralany successor estate representative under sectionSection 506(c) of the Bankruptcy Code without, and nothing herein prejudices any defenses of the DIP Lender's prior written consent; the "equities of the case" exception to any request for relief under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender; and the doctrine of marshaling shall not apply to the DIP Collateral.Section 506(c

20. Fees and Expenses. All fees, costs and expenses of the DIP Lender in connection with the DIP Loan and the Chapter 11 Case, including the fees and expenses of its counsel, shall be paid by the Debtor as and when provided in the DIP Loan Documents and paragraph 8C of this Order, shall constitute DIP Obligations secured by the DIP Liens and entitled to superpriority status, and shall be payable without the necessity of filing a fee application or obtaining further order of the Court.

21. Events of Default and Remedies. The DIP Loan Documents contain customary eventsEach of the following is an event of default under this Order (each, an "Event of Default"): (a) any event of default under the DIP Commitment Letter or, once signed and filed with the Court under paragraph 5 of this Order, any other DIP Loan Document; (b) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or dismissal of the Chapter 11 Case; (c) appointment of a trustee under Section 1104 of the Bankruptcy Code, or of an examiner with

powers beyond those set forth in Sections 1106(a)(3) and (4) of the Bankruptcy Code; (d) entry of an order granting relief from the automatic stay to the holder of any lien on or interest in the Real Property, other than the DIP Lender, to foreclose or otherwise enforce that lien or interest against the Real Property; (e) entry of an order amending, supplementing, staying, vacating, or otherwise modifying this Order without the DIP Lender's prior written consent; (f) the Debtor's failure to complete the renovation of the Project within the time required by paragraph 8B(d) of this Order, or to achieve any Milestone by its Milestone Deadline (as extended under that paragraph); (g) the Debtor's use of any DIP Loan proceeds other than as permitted by this Order, including paragraph 8; and (h) the Debtor's failure to perform or comply with any other material term of this Order; and (i) the Debtor's inability to use cash collateral for any reason, including the expiration, termination, vacatur, or stay of any order authorizing its use. Upon the occurrence and during the continuance of an Event of Default, and following ten (10) calendar days' written notice to the Debtor, the United States Trustee, and counsel for Churchill and Zlur, the automatic stay shall be modified without further order of the Court to permit the DIP Lender to exercise all rights and remedies under the DIP Loan Documents and applicable non-bankruptcy law, subject to the right of any party in interest to request an emergency hearing within that notice period limited to the question whether an Event of Default has occurred and is continuing. The DIP Lender may waive any Event of Default, in whole or in part, in writing and in its sole discretion, with notice to the Debtor, the United States Trustee, and counsel for Churchill and Zlur. A waiver of one Event of Default does not waive any other Event of Default.

22. Conversion, Dismissal and Plan. The DIP Liens, the DIP Obligations and the superpriority claims granted to the DIP LenderDIP Superpriority Claims shall survive, and shall not be modified, altered or impaired by, any conversion of the Chapter 11 Case to a case under

chapter 7, any dismissal of the Chapter 11 Case, or the confirmation of any plan, and shall be binding upon any trustee appointed in the Chapter 11 Case or in any superseding case. The Prepetition Liens shall likewise survive any conversion or dismissal of the Chapter 11 Case, with the relative priority established by this Order. Nothing in this paragraph limits the treatment of any Prepetition Lender's claim under a plan.

23. Waiver of Bankruptcy Rules 4001(a)(4) and 6004(h). This Order shall be effective immediately upon entry, and the fourteen-day stay otherwise provided by Bankruptcy Rules 4001(a)(4) and 6004(h) is hereby waived.

24. Bankruptcy Rule 7052. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

25. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Order according to its terms.

## MILESTONE SCHEDULE

(Paragraph 8B(d))

Milestone 1. Permits obtained and site improvements commenced: [•]30 days after the initial Advance is funded.

Milestone 2. Exterior work substantially complete: [•]75 days after the initial Advance is funded.

Milestone 3. Interior rough-in (electrical, plumbing, and HVAC) complete: [•]120 days after the initial Advance is funded.

Milestone 4. Interior finish work, kitchens, and bathrooms substantially complete: [•]150 days after the initial Advance is funded.

Milestone 5. Final completion, including any required certificates of occupancy: ~~[•] days after the initial Advance is funded~~the completion date required by paragraph 8B(d).